UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael ANDREWS,
Defendant-Appellant.

No. 77-1818.

United States Court of Appeals,
Tenth Circuit.

Submitted Aug. 7, 1978.

Decided Oct. 13, 1978.

Rehearing Denied Nov. 2, 1978.

Michael F. DiManna, Denver, Colo., for defendant-appellant.

Donald M. Hoerl, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Michael Andrews appeals his jury conviction of distributing cocaine, a Schedule II narcotic controlled substance, in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2.

The Government developed its case primarily by the testimony of Harry Galer, Drug Enforcement Administration (DEA); Ronald Baker, special agent, DEA; Jean Perlmutter, immunized co-conspirator; and Buddy Goldston, chemist for DEA.

Galer testified that: on the evening of February 20, 1976, at a time when he was working in an undercover capacity for DEA, he was contacted by Perlmutter who related that he had arranged for the sale of four (4) ounces of cocaine to Galer and that Galer should come to his residence in Boulder, Colorado, with $7,000 to effectuate the sale; he arrived at Perlmutter's apartment at approximately 10:00 P.M., where he and Perlmutter were joined by Gregory Vanlandingham who arrived about fifty minutes later; Vanlandingham produced a baggie of cocaine for Galer's inspection; a discussion took place relative to consummating the sale during which Galer insisted upon purchasing the entire four ounces at one time, rather than one ounce at a time as Vanlandingham suggested; he told Vanlandingham to return to his partner to as-

certain if his partner would agree to sell all four ounces at one time; thereafter Perlmutter and Vanlandingham walked down the street from Perlmutter's apartment in order to meet with another party who was waiting in a parked vehicle; after Perlmutter returned, they proceeded up the outside apartment stairs and retrieved four ounces of cocaine out of a bush which was given to Galer; when Perlmutter handed the cocaine to Galer he indicated that Vanlandingham and his partner were seated nearby in a car watching the transaction; arrests were made shortly thereafter; Andrews was arrested with Vanlandingham in a car parked near the apartment.

Baker testified that: on February 20, 1976 he, with other officers, conducted surveillance in conjunction with the undercover activity of Galer; surveillance was conducted from a parking lot maintained for a sanitarium[1] located about two houses removed from Perlmutter's apartment; at approximately 10:45 P.M. he observed a car enter the parking lot and Vanlandingham, whom he was able to identify, then exited the vehicle and walked out of view; the driver of the vehicle, later identified at the time of arrest as Andrews, exited the car several minutes after Vanlandingham left the immediate area; Andrews returned shortly thereafter and drove the car back onto the street where he parked it; approximately twenty minutes later, Vanlandingham and Perlmutter were observed walking in the direction of the car parked by Andrews; he heard the car motor start up and observed it exiting the area and return shortly thereafter; Perlmutter was observed walking toward his apartment residence; two or three minutes later the car previously observed in the parking lot was seen moving closer to Perlmutter's residence; shortly thereafter Galer notified him that Perlmutter had been arrested; at that time he drove his vehicle out of the parking lot and parked it directly behind the "subject suspect vehicle" and placed Vanlandingham and Andrews under arrest. On cross-examination, Baker related that although he did not see Vanlandingham and Perlmutter get into the subject suspect car, he also did not observe them walking past the end of either driveway of the parking lot.

Perlmutter, who was granted immunity, testified that: on the evening of the illicit sale, Vanlandingham stopped by Perlmutter's apartment prior to Galer's arrival and dropped off a scale; Vanlandingham wanted to sell the cocaine to Galer one ounce at a time but Galer disagreed and said he wanted to buy all four ounces at one time; he and Vanlandingham then "proceeded down the street to a waiting vehicle where Michael Andrews was in and we got in the car"; Vanlandingham told Andrews he thought the buyers (agents) were "cool" and that it would be all right to sell all four ounces at once; Andrews stated the reason he had never been busted was because he had taken precautions; Andrews then drove his vehicle down the street, stopped it next to a curb, opened his door and, without exiting, removed cocaine from a bush which he then handed to Vanlandingham; Andrews then drove the car back where he parked it in front of the resthome (located next to the parking lot where Baker had set up surveillance); as he was exiting Andrews' car, Andrews told him to check out the suspicious parties at the old folks' home; after checking the parking lot and failing to observe anything suspicious, he walked back to his residence, with Vanlandingham following him; Vanlandingham handed him the cocaine on the outside steps of his apartment and Vanlandingham then returned to the car; at the top of his outside steps he placed the three ounces of cocaine received from Vanlandingham in a bush, entered the apartment and obtained the remaining ounce of cocaine which he also then placed in the bush; after placing the cocaine in the bush, he went to Galer's car where he indicated that he had all four ounces of cocaine; he and Galer then went back up the apartment steps, he delivered the cocaine to Galer, and was then arrested.

1. The sanitarium involved was Mesa Vista Sanitarium and is referred to in the record as the "sanitarium," "resthome," and "old folks' home."

On cross-examination Perlmutter admitted that he had obtained cocaine from Vanlandingham on prior occasions and that he had been granted immunity for testifying.

Goldston testified relative to receiving the cocaine involved following the arrests which were made herein, that he first stored it in a vault, tested it and then delivered it to Denver, Colorado, for purposes of the trial.

At the close of the Government's case-in-chief, Andrews moved for a judgment of acquittal. He contended that venue had not been established and that the Government had failed to establish anything beyond his knowing presence during the sale or possible distribution of narcotic drugs. The trial court took judicial notice that Boulder is in the State and District of Colorado in denying Andrews' lack of venue contention and the court also denied Andrews' motion based upon the insufficiency of the evidence. Andrews did not present any evidence.

On appeal Andrews contends that the trial court erred in: (1) admitting Perlmutter's testimony as an immunized co-conspirator; (2) taking judicial notice that venue was proper; (3) admitting plastic bags of the cocaine involved in the case, and (4) in denying his motion for judgment of acquittal.

I.

Andrews contends the trial court erred in admitting hearsay testimony of his alleged co-conspirators' statements because independent evidence of a conspiracy was inadequate. A review of the general law of conspiracy should facilitate our disposition of this contention.

■ The essence of the crime of conspiracy is an agreement to violate the law. *United States v. Butler*, 494 F.2d 1246 (10th Cir. 1974); *Carter v. United States*, 333 F.2d 354 (10th Cir. 1964). The evidence in a criminal conspiracy trial, such as the instant case, need only establish the *existence* of a conspiracy and that a defendant *knowingly contributed* his efforts in furtherance there-

of. *United States v. Jackson*, 482 F.2d 1167 (10th Cir. 1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974); *Collins v. United States*, 383 F.2d 296 (10th Cir. 1967). The nature of the offense of conspiracy with its attendant aspects of secrecy, often requires that elements of the crime be established by circumstantial evidence. Thus, the common plan or purpose may be inferred from a combination of circumstances. *Jordan v. United States*, 370 F.2d 126 (10th Cir. 1976), *cert. denied*, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 595 (1967); *Baker v. United States*, 329 F.2d 786 (10th Cir. 1964), *cert. denied*, 379 U.S. 853, 85 S.Ct. 101, 13 L.Ed.2d 56 (1964). The Government's evidence may establish an ongoing course of conduct giving rise to one continuing conspiracy, covering an extended period of time. *United States v. Bridwell*, 583 F.2d 1135 (10th Cir. 1978); *United States v. Gunter*, 546 F.2d 861 (10th Cir. 1976), *cert. denied*, 431 U.S. 920, 97 S.Ct. 2189, 53 L.Ed.2d 232 (1977). Accordingly, a party may join an ongoing conspiracy during its progress and become criminally liable for all acts done in furtherance of the scheme. *United States v. Gamble*, 541 F.2d 873 (10th Cir. 1976); *United States v. Thomas*, 468 F.2d 422 (10th Cir. 1972), *cert. denied*, 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973). Once a conspiracy is established, only slight evidence is required to connect a co-conspirator. *United States v. Turner*, 528 F.2d 143 (9th Cir. 1975), *cert. denied*, 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976); *United States v. Rodriguez*, 498 F.2d 302 (5th Cir. 1974); *United States v. Marrapese*, 486 F.2d 918 (2nd Cir. 1973), *cert. denied*, 415 U.S. 994, 94 S.Ct. 1597, 39 L.Ed.2d 891 (1974).

■ We have previously held that acts and declarations of one co-conspirator are admissible against another if the *existence* of a conspiracy is in fact first established by independent evidence and if the acts and declarations occurred during and in furtherance of the conspiracy. *United States v. Jones*, 540 F.2d 465 (10th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *Lowther v. United*

*States,* 455 F.2d 657 (10th Cir. 1972), *cert. denied,* 409 U.S. 857, 93 S.Ct. 114, 34 L.Ed.2d 102 (1972). This view was further enunciated in *Anderson v. United States,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), where the Court stressed the admissibility of "evidence, such as that of *acts* of alleged conspirators":

> The doctrine that declarations of one conspirator may be used against another conspirator, if the declaration was made during the course of and in furtherance of the conspiracy charged, is a well-recognized exception to the hearsay rule which would otherwise bar the introduction of such out-of-court declarations. . . . The hearsay-conspiracy exception applies only to declarations made while the conspiracy charged was still in progress, a limitation that this Court has "scrupulously observed." . . .
>
> But, as the Court emphasized in *Lutwak,* [344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593] the requirement that out-of-court declarations by a conspirator be shown to have been made while the conspiracy charged was still in progress and in furtherance thereof arises only because the declaration would otherwise be hearsay. The ongoing conspiracy requirement is therefore inapplicable to evidence, such as that of *acts* of alleged conspirators, which would not otherwise be hearsay. Thus the Court concluded in *Lutwak* that acts of one alleged conspirator could be admitted into evidence against the other conspirators, if relevant to prove the existence of the conspiracy, "even though they might have occurred after the conspiracy ended."

417 U.S., at pp. 218–219, 94 S.Ct. at p. 2259.

**2.** Rule 104. Preliminary Questions

(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

(b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the

Under the new Federal Rules of Evidence, rules 104(a, b) [2] and 801(d)(2)(E) [3], 28 U.S.C.A., if it is more likely than not that a declarant and coconspirator were members of a conspiracy when hearsay statements were made and the statements were in furtherance of a conspiracy, that hearsay is admissible. *United States v. Petrozziello,* 548 F.2d 20 (1st Cir. 1977). In *Petrozziello, supra,* the Court observed:

> Appellant's last claim is that the evidence against him was insufficient. In particular, he focuses on the dearth of independent, non-hearsay evidence that a conspiracy existed between appellant and the dealer. Evidence of this sort, he argues, is a necessary foundation for the hearsay statements of the dealer, which were admitted under the co-conspirator exception. Because appellant was tried a few months after the new federal rules of evidence took effect, we must consider their impact. The new rules recognize the co-conspirator exception; statements are "not hearsay" if they are offered against a party who conspired with the declarant, and if they are made during and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E). However, the rules make a change in the way the co-conspirator exception is applied. In this circuit, the jury has had a prominent role in deciding whether the co-conspirator exception can be invoked. Trial courts instruct the jury that a co-conspirator's hearsay may be used against a defendant only if the defendant's membership in the conspiracy has been established by independent, non-hearsay evidence. *United States v. Honneus,* 508 F.2d 566, 577 (1st

fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

**3.** Rule 801. Definitions

\* \* \* \* \* \*

(d) Statements which are not hearsay. A statement is not hearsay if—

\* \* \* \* \* \*

(2) . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). The new rules, however, give the jury only a narrow responsibility for deciding questions of admissibility. Most issues are resolved finally by the judge. . . .

\* \* \* \* \* \*

That, however, is not the end of the matter. The new rules, by eliminating the jury's role, place a greater burden on the judge, for his decision is now conclusive. In years past, this circuit has followed the general rule that the judge should admit hearsay against a defendant if the judge finds enough independent, non-hearsay evidence to make a prima facie case of conspiracy. *United States v. Johnson*, 467 F.2d 804 (1st Cir. 1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); *see also United States v. Nixon*, 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). This standard makes sense when the jury has the last word; the judge should refuse to admit a co-conspirator's hearsay only when no reasonable jury could find that there was a conspiracy. But rule 104(a) requires that questions of admissibility be "determined" by the judge, and finding a prima facie case is not the same as "determining" that a conspiracy existed. A higher standard is implicit in the judge's new role.

Other changes in the rules also suggest a higher standard. The new rules permit a trial judge to base his "determination" on hearsay and other inadmissible evidence. Fed.R.Evid. 104(a). . . . 548 F.2d, at pp. 22–23.

■ Evidence of the acts and statements of other co-conspirators may be admitted prior to demonstrating participation in the conspiratorial scheme by the objecting defendant, providing the foundation is subsequently laid. *United States v. Krohn*, 573 F.2d 1382 (10th Cir. 1978); *Beckwith v. United States*, 367 F.2d 458 (10th Cir. 1966).

■ The testimony of Agent Galer and Perlmutter established the existence of a conspiracy to effectuate an illicit drug sale in relation to the facts and circumstances of the meeting at Perlmutter's apartment between Perlmutter, Vanlandingham and Galer. Thus, the existence of the conspiracy was established. Statements thereafter made by co-conspirators in the course of and in furtherance of the conspiracy are thus not considered hearsay under rule 801(d)(2)(E). Perlmutter's testimony was properly admitted.

We have consistently held that testimony, otherwise hearsay, offered against a co-conspirator cannot be admitted unless the existence of the conspiracy is established by independent evidence. The existence of the conspiracy in this case was initially established when Perlmutter and Vanlandingham met with Galer in Perlmutter's apartment. It is uncontested that two conspirators, Perlmutter and Vanlandingham were present in the apartment and that their singular purpose was that of effectuating an illicit sale of cocaine to Galer. Statements thereafter made by Andrews, Vanlandingham and Perlmutter, testified to by Perlmutter, were properly admitted. They were made after the existence of the conspiracy had been first established by independent evidence. Accordingly, they were admissible as statements made during the course of and in furtherance of the on-going conspiracy.

■ Even were we to assume, which we do not, that the statements attributed to Andrews testified to by Perlmutter were inadmissible, the existence of the conspiracy and Andrews' participation therein was established by substantial independent evidence. As noted, *supra*, Galer's testimony established the existence of the conspiracy to sell the cocaine. Agent Baker's testimony established Andrews' presence in the immediate area of the sale at the time thereof. Perlmutter's testimony established that he and Vanlandingham entered Andrews' car, that Andrews drove the car a short distance and retrieved cocaine from a bush located close to the curb of the roadway, and that Andrews gave the cocaine to Vanlandingham who subsequently gave it to Perlmutter for delivery to Galer to effec-

tuate the sale. This testimony relates exclusively to *acts* of Andrews rather than declarations. These facts thus establish the existence of the conspiracy together with Andrews' participation therein beyond a reasonable doubt. Under such circumstances, Perlmutter's testimony relative to statements made during the course of the conspiracy did not carry the weight so often attendant thereon.

## II.

We have considered Andrews' remaining allegations of error. We hold that they are individually and collectively without merit.

WE AFFIRM.