**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Howard MARTIN and Richard Dressel,
Defendants-Appellants.**

**Nos. 78–1514, 78–1515.**

United States Court of Appeals,
Tenth Circuit.

Submitted July 18, 1979.

Decided Dec. 13, 1979.

---

Richard N. Stuckey, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Gary H. Hemminger, Englewood, Colo. (Hemminger & Whittaker, Englewood, Colo., on the brief), for defendants-appellants.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

A twelve-count indictment charged five defendants in a complex grain fraud and stolen truck trailer case with violations of 18 U.S.C. § 1962 (Racketeering), 18 U.S.C. § 1343 (Wire Fraud), and 18 U.S.C. § 2315 (Receipt of Stolen Goods Moved in Interstate Commerce). The five defendants were Howard Martin and Richard Dressel, the appellants, and one Paul Ervin, James Witt and Calvin Weber. The two counts of the indictment charging the receipt of stolen truck trailers concerned Ervin and Weber only. Those two counts were severed for trial purposes, and the trial of that particular matter resulted in Ervin being convicted on one count, with the jury being unable to reach a verdict on the other count involving Ervin, or on either count involving Weber. Thereafter the Government dismissed all charges against Weber.

The charges of racketeering and wire fraud against Martin and Dressel, the appellants, and the two remaining defendants, Ervin and Witt, then came on for trial. Shortly prior to trial Ervin pled guilty to one count of the indictment, and thereafter testified as a Government witness in the trial of the remaining three defendants. The ensuing trial resulted in the defendant Witt being convicted on four counts. Witt does not appeal. Martin and Dressel were both convicted on count one which charged a conspiracy to violate 18 U.S.C. § 1962. Martin was also convicted on count six of this indictment which charged a violation of the wire fraud statute, 18 U.S.C. § 1343.

Martin and Dressel now appeal their respective convictions. The only matter urged for reversal is the alleged insufficiency of the evidence to support their respective convictions. Our study of the record has convinced us that there is ample evidence to support the jury's verdicts, and accordingly we affirm.

Before considering the evidence adduced at trial, brief reference will be made to the legal principles which govern this appeal. In determining whether the evidence is suf-

ficient to support a criminal conviction, the evidence itself must be viewed in a light most favorable to the Government. This is so because a jury has already found beyond a reasonable doubt that the defendant is guilty of the crime charged. Such means that any conflict in the evidence must be resolved in favor of the Government. Also, permissible inferences must be those which support the Government's theory of the case. Substantive crimes are themselves often established by circumstantial evidence, as opposed to direct evidence, and criminal conspiracies are generally established by only circumstantial evidence. Criminal conspiracies are seldom, if ever, reduced to writing, and are generally proven by conduct, and the circumstances surrounding such conduct. *United States v. Andrews*, 585 F.2d 961 (10th Cir. 1978) and *United States v. Birmingham*, 454 F.2d 706 (10th Cir. 1971).

Brief reference to the evidence will indicate why we are convinced that the evidence in the instant case amply supports the jury's several verdicts. The Government called an array of witnesses, who generally fell into one of three categories: (1) persons who worked for the Paul Ervin Trucking Company of Sterling, Colorado, including Paul Ervin, owner of the company; (2) drivers who worked for the Ervin Trucking Company and testified concerning their fraudulent weighing techniques; and (3) victims of the scheme, including those who sold grain to Ervin Trucking Company, and those who bought grain from the company. Also, there was documentary evidence portrayed on a chart for consideration by the jury which revealed specific weight gains on numerous interstate grain hauling trips of the various drivers, including the two appellants. Neither Martin nor Dressel testified, though the defense did call two witnesses. So, for practical purpose, the evidence we are here called upon to review is that offered by the Government, and nothing more.

On appeal counsel concedes that the Government established beyond all doubt that a conspiracy did exist involving Paul Ervin and his employee-drivers. The scheme used involved false weighings. Through the use of "air bags" and other schemes and devices, false weights could be obtained. The plan of course was to acquire more grain than the weigh-in showed was being purchased, and then sell less grain than the scales showed was being sold. In that way a profit was obtained in both the buying and the selling of a particular shipment. Such profit was split between Ervin and his employee-drivers on a 50–50 basis. We shall not here elaborate on the intricacies of the "air bags" and related fraudulent schemes and devices. Such is not necessary. It is sufficient to say that the schemes were ingenious, devious and dishonest.

■ As indicated, counsel concedes, as well he must, that Ervin and his employee-drivers were involved in a conspiracy. But, argues counsel, the evidence does not show that Martin and Dressel were themselves a part of that conspiracy. We disagree.

Martin and Dressel were not employees of Ervin's. However, they did work for Ervin on a contract basis. Dressel drove his own truck. Martin drove a truck belonging to his employer, James Witt, who, as mentioned above, was convicted on four counts of the indictment and did not appeal. Martin and Dressel would pick up grain purchased by Ervin in his own name, transport the grain to the ultimate buyer, all such sales having been arranged by Ervin's company. Ervin's area of business operation included Nebraska, Wyoming, Colorado and Arizona. Ervin received a so-called "brokerage fee" of 10% from Martin and Dressel out of the profit arising from each shipment. Under such scheme the greater the profit, which would be enhanced by false weighings, the greater the reward to both Martin and Dressel, as well as Ervin himself.

The evidence is such as to clearly permit the jury to find that both Martin and Dressel had "air-bags" on their respective trucks. Documentary evidence showed that both Martin and Dressel made numerous deliveries for Ervin in which there was a

substantial "weight gain," i. e. the weight on delivery to the buyer was substantially greater than the weight of the grain received from the seller.

Counsel concedes, in effect, that the Government's case against Martin is perhaps stronger than that against Dressel, and argues that Dressel's conviction, if not Martin's conviction, should be reviewed. We do not agree. In addition to the incriminating evidence against both Dressel and Martin, as outlined above, there is, as concerns Dressel only, the incriminating fact that once the case "broke," Dressel's actions were such as to fully permit the jury to infer that Dressel was "covering up." Dressel produced a grain auger which was said to have been used to transfer grain from one truck to another, which was supposed to account for weight gains. One witness testified that the grain auger was produced to make it "look like" the weight gains were accounted for by legitimate grain transfers. In sum, the evidence supports the jury's verdict that Martin and Dressel were both a part of the Ervin conspiracy.

Under count six Martin was also convicted of a violation of the wire fraud statute, 18 U.S.C. § 1343. Specifically, the charge concerned an interstate wire communication between Sterling, Colorado and Phoenix, Arizona to further the fraud scheme involving an interstate trucking trip on February 10, 1977. The evidence indicated that Martin had in fact transported a shipment of cottonseed meal from Phoenix, Arizona to Ainsworth, Nebraska on or about that date, and that there was a substantial "weight gain" in the load between "weigh-in" in Phoenix and "weigh-out" in Ainsworth. Counsel complains that there was no direct evidence that any interstate communication was made in connection with that particular trip. That may well be true. However, circumstantial evidence permits the inference that interstate telephone communication was in fact made. The dispatcher for the Ervin Trucking Company was a Government witness and the gist of his testimony, which was not in

any manner contradicted, was that he used the telephone in connection with *all* shipments of grain made on behalf of the company. See *United States v. Roselli*, 432 F.2d 879, 893 and 897 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971) where "a pattern of interstate phone calls, interstate travel, and interstate transportation" was held sufficient to sustain a conviction. In the instant case there is the same pattern, and much more.

Judgment affirmed.