**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Max DuFRIEND,
Defendant-Appellant.**

No. 81–1796.

United States Court of Appeals,
Tenth Circuit.

Oct. 14, 1982.

Certiorari Denied Jan. 24, 1983.
See 103 S.Ct. 820.

C. Rabon Martin, Tulsa, Okl., for defendant-appellant.

Mark F. Green, Asst. U. S. Atty., Muskogee, Okl. (Betty Outhier Williams, U. S. Atty., Muskogee, Okl., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY and SEYMOUR, Circuit Judges, and KELLY,* District Judge.

KELLY, District Judge.

James Max DuFriend was convicted by a jury of one count of conspiracy to import marijuana into the United States in violation of 21 U.S.C. §§ 952(a) and 963, and one count of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Court sentenced the defendant to three years on each count, to be served concurrently. The defendant raises six issues on appeal; each is treated below.

### The Co-Conspirator Exception to the Hearsay Rule

The defendant has given most of his attention on appeal to the contention that the trial court erred by admitting certain hearsay evidence against him through an alleged co-conspirator who had earlier decided to cooperate with the government. This testimony, described below, was given by Lawrence New, the prosecution's first and principal witness, who piloted the aircraft used to import marijuana from Mexico, and who pled guilty to a single misdemeanor count of possession of marijuana. New met the defendant in a technical school and later flew jump planes for the defendant's parachute skydiving school. Defendant offered New $20,000.00 to participate in the import of marijuana. After New accepted the offer in December, 1980, defendant bought a twin-engine propeller aircraft on December 31, 1980, and New flew the new airplane back to Oklahoma after the purchase. Defendant then modified the fuel system of the aircraft to install a collapsible rubber "fuel bladder" to increase the plane's range. In early January, 1981, New flew the defendant to California where a meeting of the other co-conspirators took place.

In late January New took a commercial flight to Mexico, at the defendant's expense, to look over the landing strip where he was to make the marijuana pickup. On February 1, 1981, New left from Tulsa in the defendant's airplane. Before departing for Mexico, at defendant's suggestion, New took along fishing and camping gear to give the trip a legitimate appearance, and the defendant helped New load this equipment into the plane. New also was given expense money by another co-conspirator in the defendant's presence before departing. After New had had the plane loaded with approximately 600 pounds of marijuana in Mexico, the plane developed a malfunction in its landing gear on takeoff. New decided to fly on to Oklahoma, and twice during the flight he telephoned defendant from the air to report his status. Due to fuel problems New was forced to land at a regular airport rather than at the defendant's own grass strip next to his home as originally planned. As New was landing the plane at the Okmulgee, Oklahoma, airport, one side of the landing gear collapsed and the plane spun off the runway. When New saw people running toward the airplane, he jumped out of the aircraft and ran into some nearby woods. Later that evening New telephoned the defendant at his home to advise him of developments. Coincidentally, at that time a state narcotics agent was questioning the defendant regarding his airplane. During the telephone call the agent, on an extension line, identified himself, and New told the agent where he could be found for surrender.

In recent opinions this Court has stated certain rules, referred to as the "preferred order of proof," to guide trial courts in this circuit when deciding whether to admit hearsay statements of co-conspirators. *United States v. Petersen,* 611 F.2d 1313 (10th Cir. 1979); *United States v. Andrews,* 585 F.2d 961 (10th Cir. 1978). In *United States v. Peterson,* we reiterated our ruling in *United States v. Andrews:*

* Of the United States District Court for the District of Kansas, Sitting by Designation.

Our *Andrews* holding was simply that a district court judge, under Rule 104 of the Federal Rules of Evidence, must determine, prior to admission of a hearsay statement, as a factual matter, that the Government has shown by independent evidence that it is more likely than not that (1) the conspiracy existed; (2) the declarant and the defendant against whom the conspirator's statement is offered were members of the conspiracy; and (3) the statement was made during the course of and in furtherance of the objects of the conspiracy.

*United States v. Petersen,* 611 F.2d at 1330. As a further guide to trial judges, we recommended the procedure outlined in *United States v. James,* 590 F.2d 575, 581–82 (5th Cir. 1979). In *Petersen,* we stated that the trial court's determination regarding the admissibility of hearsay co-conspirators' statements should normally be made during the government's case in chief, and that a substantial independent evidence rule must be applied. We also recommended that, whenever possible, the prosecution first introduce its independent proof of the conspiracy and the defendant's connection thereto before admitting hearsay declarations of co-conspirators. *Id.* at 1330.

 Essentially, the appellant contends that the prosecution was required to prove the existence of the conspiracy through some means independent of the testimony of an alleged co-conspirator who has agreed to be a government witness before co-conspirator hearsay can be admitted. However, none of the cases cited by the appellant, including *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), support this contention. The record from the trial court indicates that the prosecutor and the Court were aware of the "preferred order of proof" rule, and were careful to avoid testimony regarding hear-

say statements of co-conspirators until the trial court made the required findings outside of the jury's presence. The trial court made these findings while Mr. New was testifying during the government's case in chief.[1] Prior to this determination by the trial court, New testified regarding his actions, certain actions by the appellant of which the witness was personally familiar, and statements made by the appellant to New. New's testimony regarding the appellant's statements made during the course of the conspiracy are not hearsay under F.R.E. 801(d)(2), and consequently they do not come under the co-conspirator hearsay rules discussed above. Only after the Court made the required findings did the prosecution introduce hearsay evidence through Mr. New regarding statements by other co-conspirators not on trial. Consequently, we find no error in the manner in which the trial court employed the "preferred order of proof" rule. Furthermore, and contrary to the defendant's contentions, we find there was substantial independent evidence that the conspiracy existed, that the appellant was a member of that conspiracy, and that the hearsay statements of other co-conspirators offered against him were made in furtherance of the conspiracy.

### Sufficiency of Proof Regarding Appellant's Involvement in a Distribution Conspiracy

 The appellant contends there was a complete failure of proof implicating the appellant in a distribution conspiracy. Although the government's proof on this count could have been stronger, there was evidence that the quantity of marijuana imported in the appellant's airplane, 600 pounds, was quite large. There was also evidence of the defendant's involvement with other co-conspirators who were not directly involved with transporting the marijuana. Juries may properly draw reasonable inferences, justified in light of their

---

1. The trial court made his rulings in the middle of New's direct testimony. Prior to this New had testified that the appellant had solicited him into the conspiracy with the promise of $20,000 after New returned from Mexico, that the appellant then bought the plane and installed the auxiliary collapsible fuel tank, that New

flew the appellant to California for a meeting of the conspirators, that the appellant had picked the two alternate landing sites, that New telephoned the appellant during the flight from Mexico to report his status, and that the appellant personally gave expense money to New for his first trip to Mexico.

common experiences, from facts which they find have been proved. *United States v. Burns,* 624 F.2d 95, 102 (10th Cir. 1980). Evidence of quantity of a controlled substance generally is relevant to intent to distribute. *United States v. Palmere,* 578 F.2d 105, 108 (5th Cir. 1978).

In determining the sufficiency of the evidence, the inferences drawn are reviewed in a light most favorable to the government. *United States v. Erb,* 596 F.2d 412 (10th Cir. 1979). We find that to question the reasonableness of the jury's verdict tying the appellant to a conspiracy to distribute marijuana would be naive; consequently the trial court did not err by allowing the appellant's conviction on Count II to stand. Furthermore, there clearly is no inherent double jeopardy problem raised by appellant's convictions for both conspiracy to import and conspiracy to distribute marijuana. *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

### Prosecutor's Comments

The appellant contends that the federal prosecutor, during his closing argument, made statements regarding the appellant's decision not to testify that were so prejudicial that a new trial should be granted. The following is the more questionable of the two comments singled out by the appellant:

Ladies and gentlemen, defense counsel has made quite a to-do about the fact the only evidence we had was an agreement, a conspiracy, came from Mr. New. Well, he is partially right, the only evidence we have of an agreement as far as those discussions go, and that those agreements were made, that's all we got is Mr. New's testimony. What you need to consider is the reason for that is there's not anybody else told you about it. *He is the only party privy to those conversations that*

*has come forth to tell us about it.* I wish we had all the co-conspirators here to testify against that defendant, but I can't make them testify. *Mr. New is the only one that has been a big enough man to admit he was wrong,* and the only one to come here and testify and tell you the story.

(Emphasis supplied).

The appellant argues that these comments violated his right to remain silent and thus were prejudicial. Grounds for a new trial occur when the prosecutor's argument "was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Runnels v. Hess,* 653 F.2d 1359, 1361 (10th Cir. 1981), *citing Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955). According to *Runnels,* the crucial distinction to be made is whether the prosecutorial statements go directly to the accused's failure to testify, or whether the statement is to bolster the credibility of the government's principal witness, Lawrence New, by commending his contrition. The other prosecutorial comment singled out by the appellant concerned one of the appellant's defense theories, and it was so incoherent and ambiguous that we find it harmless.[2]

Although the prosecutor should have exercised more care to avoid any implications regarding the appellant's decision not to testify, his comments do not appear to be manifestly intended to make the jury cast a jaundiced eye on the appellant for not testifying.

### Other Issues

The appellant's last two points on appeal do not deserve extensive comment. The appellant contends that the government's evidence was insufficient to sustain

---

**2.** During his closing argument the prosecutor stated the following: "The bladder tank was purchased. There is no doubt that those bladder tanks have common usage. There is a lot of things that have common uses that are used illegally. I submit to you that was one of them. It was used to facilitate the importation of marijuana, and this Defendant may or may not say whether or not he knew what it was going to be, but the fact remains it's just coincidence here...."

a conviction on either the importation or the distribution counts. Although the government's case was arguably weak, in that it was built almost entirely on the largely uncorroborated testimony of a co-conspirator, a jury may return a conviction on such uncorroborated testimony. *United States v. Gunter,* 546 F.2d 861 (10th Cir. 1976). Furthermore, the trial court correctly instructed the jury that when the testimony of a co-conspirator is uncorroborated, his testimony must be carefully scrutinized and received with caution. *See United States v. Hill,* 627 F.2d 1052, 1053 (10th Cir. 1980). We find that the evidence, especially after viewing it in a light most favorable to the government, was sufficient to sustain convictions on both counts.

The appellant's final point on appeal is that the trial court abused its discretion by denying the defendant probation, because he had no prior record of criminal activity. A review of the record below indicates the appellant was a twenty year veteran of the United States Marines and a good citizen before venturing into the drug scene. For these offenses he has been sentenced to three years incarceration without probation. In determining an appropriate sentence, the trial court doubtless considered retribution as well as the deterrent factor that incarceration might have or should have on others similarly situated, who might be tempted to engage in similar ventures. Certainly, the defendant's sentence was within the trial court's prerogatives and we find no abuse of his discretion.[3]

The convictions are affirmed.

---

**3.** We note that after oral argument we permitted the defendant to make part of the appellate file the sentencing record of Carl B. Damon filed November 16, 1981, in the case of *United States v. Damon,* No. 81-0306-N-C (S.D.Cal. 1981).