**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert MONACO and Terry Ratliff,
Defendants-Appellants.**

**Nos. 81–2485, 81–2486.**

United States Court of Appeals,
Tenth Circuit.

Jan. 10, 1983.

Rehearing Denied in No. 81–2485
March 11, 1983.

---

Frank Martinez, Denver, Colo. (Rodney W. Snow of Dixon & Snow, Denver, Colo., with him on the brief), for defendant-appellant Robert Monaco.

Jonathan L. Olom of Marks & Olom, Denver, Colo., for defendant-appellant Terry Ratliff.

Robert Gay Guthrie, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Robert Monaco and Terry Ratliff appeal their convictions on one count of conspiracy to use facilities in interstate commerce to promote prostitution, a violation of 18 U.S.C. § 371, and three counts of use of facilities in interstate commerce to promote prostitution, violations of 18 U.S.C. § 1952(a)(3). The trial was to the court without a jury.

The issues on appeal are: (1) whether the Travel Act, 18 U.S.C. § 1952, applies to these cases; (2) whether the court erred in failing to strike the testimony of a government witness because a taped statement she gave to city police was lost; (3) whether the court erred in refusing to suppress evidence seized in the search of the defendants' office because the affidavit used to secure the search warrant contained errors or because the affidavit did not provide probable cause to issue the warrant; (4) whether the government's use of an informant was misconduct sufficiently outrageous to violate due process and thus require reversal; and (5) whether the court failed to follow the proper order of proof before admitting co-conspirator hearsay statements.

■ The defendants owned and operated two massage parlors in Denver, Colorado and two in Boise, Idaho. The defendants utilized interstate telephone service and made occasional airline trips between Denver and Boise in the management of these businesses. Cash and receipts came from the Boise parlors to Denver by air freight. As part of their work at the massage parlors female employees would perform sexual acts with customers for money. Two of the women who worked in the Boise estab-lishments became government informants and were given immunity in exchange for their testimony against the defendants. Documents utilized to convict the defendants were obtained in a federal search, pursuant to a warrant, of the defendants' business office in Denver.

The defendants claim that prostitution is traditionally left to the states to regulate. They argue that they made only limited use of interstate facilities for telephone calls and shipment of money to pursue this state-regulated enterprise, and thus the operation of their establishments was not intended to be covered by the Travel Act. They contend that *Rewis v. United States,* 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), which held that Congress did not intend the Travel Act to punish operation of an essentially intrastate gambling establishment whose customers at times traveled across state lines to place bets, precludes application of the Act to the operation of their businesses. We do not agree. We have applied the Travel Act in cases involving significantly less extensive interstate operations than those at issue here. *See United States v. Barbieri,* 614 F.2d 715, 717 (10th Cir.1980); *United States v. Stevens,* 612 F.2d 1226, 1231 (10th Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). We do not believe *Rewis* forbids application of the Act to the closely connected management of houses of prostitution in two states that regularly employed several instruments of interstate commerce to achieve its illegal purposes. Rather, *Rewis* teaches that the Act was aimed, "specifically, at persons who reside in one State while operating or managing illegal activities in another." 401 U.S. at 811, 91 S.Ct. at 1059 (footnote omitted).

■ Witness Patricia Close, who worked in the Boise massage parlors, testified as a government witness under a grant of immunity. During the original investigation of the massage parlors, Close gave a tape-recorded statement to Denver police officers. The Jencks Act entitled the defendants to a copy of this tape recording after her trial testimony. The government stat-

ed at the trial, however, that the tape recording could not be located by the police and was lost. There is no evidence in the record that anyone deliberately concealed the tape or purposefully destroyed it. The government has justified the loss by emphasizing that this investigation covered two states and required cooperation among federal agents and various state and local police. It asserts that the statement was one of a number taken by the Denver police, who were unable to produce the tape for federal agents. We have recently treated the issue of lost evidence in *United States v. Baca,* 687 F.2d 1356 (10th Cir.1982). We held there that when there is no evidence of governmental misconduct, the crucial question is whether the defendant could receive a fair trial without the missing evidence. Our review of the record in this case requires us to conclude that the defendants were not sufficiently prejudiced by their inability to examine the lost tape recording to justify reversal. There is no evidence that the material in it was exculpatory to the defendants. The witness who gave the recorded statement appeared in person and was subject to cross-examination. Furthermore, the other evidence against the defendants was overwhelming.[1]

■ Monaco and Ratliff claim that the affidavit used to obtain the search warrant for their Denver office at 2700 Youngfield Street contained false information and did not sufficiently tie them to the address to provide the probable cause necessary to support issuance of the warrant. We do not agree. A search warrant can be predicated upon an affidavit containing direct observations of police officers or hearsay from a reliable source or informant. *See Aguilar v. Texas,* 378 U.S. 108, 114 & n. 5, 84 S.Ct. 1509, 1514, & n. 5, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S.

410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Sherman,* 576 F.2d 292, 295–96 (10th Cir.); *cert. denied,* 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978). Officer surveillance of the defendants' regular weekly appearance at 2700 Youngfield, along with other police investigations, indicated that the defendants used the Youngfield address as an office. Defendant Ratliff's truck was licensed to that address. The affidavit provided sufficient detailed information to justify issuance of a warrant to search those premises. The other alleged errors in the affidavit are minor discrepancies. There was no evidence that the officers were guilty of deliberate falsity or reckless disregard for the truth. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Schauble,* 647 F.2d 113, 116–17 (10th Cir. 1981).

■ As part of their investigation into Monaco's and Ratliff's activities in Idaho, Boise police encouraged two informants who testified in this case to continue to work in the Boise parlors and gather information for the investigation. Monaco and Ratliff argue that this conduct by the Boise police was "so outrageous that due process principles would absolutely bar" the federal government from invoking judicial processes to obtain a conviction.[2] *See United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). They argue specifically that the government encouraged Patricia Close to engage in criminal acts of prostitution in the defendants' parlors, allowed her to use marijuana and cocaine, and permitted her to operate her own prostitution business while acting as an informant. Assuming the truth of those allegations, we do not believe the government's conduct was so outra-

---

1. Our examination of the record in light of *Baca* convinces us that the government's failure to produce handwritten notes of an undercover policewoman, Debra Bevis, is not grounds for reversal. The policewoman testified and a tape recording she had made from the notes was produced. The defense conceded that no intentional destruction by or malice on the part of the government had been shown.

2. The record indicates that the Boise police cooperated with the FBI in these investigations and hence we assume that the FBI shares responsibility for the manner in which the investigations were conducted.

geous as to require reversal of the defendants' convictions. The women had worked for the defendants before, and both testified that they would have continued to work as prostitutes regardless of their involvement in this case. To obtain evidence of certain crimes undercover agents frequently must participate in illegal activities. *See Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (government informant presumed for purposes of decision to have supplied drugs); *United States v. Russell,* 411 U.S. at 432, 93 S.Ct. at 1643 (undercover policeman supplied necessary chemical for amphetamine production); *United States v. Gentry,* 642 F.2d 385 (10th Cir.1981) (DEA agent supplied necessary chemical and gave technical advice). The defendants had been operating their prostitution enterprise for some time; the government informants in no way induced them to continue their activities against their will. *See United States v. Russell,* 411 U.S. at 433–34, 93 S.Ct. at 1643–44; *United States v. Gentry,* 642 F.2d at 387–88.

■ Finally, the defendants contend that coconspirator hearsay statements were improperly admitted by the trial court prior to its making the required finding of admissibility based upon substantial independent evidence. In a series of cases beginning with *United States v. Andrews,* 585 F.2d 961 (10th Cir.1978), this Court has developed a preferred procedure for determining the admissibility of coconspirator hearsay statements. In *United States v. Petersen,* 611 F.2d 1313 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980), we stated that the judge alone must make the determination as to admissibility based upon substantial independent evidence of the conspiracy. We said it is "preferable, whenever possible," to require independent proof of the conspiracy before admitting hearsay declarations. *Id.* at 1330. Then, at the conclusion of all the evidence,

the judge must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence, independent of the statements themselves, that a conspiracy existed, that the person against whom the statement is offered was a member of the conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy. We reaffirmed our commitment to this manner of determining the admissibility of coconspirator hearsay in *United States v. Stipe,* 653 F.2d 446 (10th Cir.1981).

Before the trial in this case began, the defendants' lawyers filed a motion in limine to preclude the introduction of coconspirator hearsay statements until the conspiracy had been established by independent evidence. The trial judge denied the motion, although he made clear that he understood that *Andrews* and *Petersen* governed the order of proof and indicated that he intended to follow their rule. We think the judge properly refused the motion in limine because a trial court has no obligation to determine admissibility of possible hearsay at the pretrial stage. The judge's refusal to enter a pretrial order meant that he would rule on questions of admissibility as they were raised by the parties. Thus, if the prosecution asked witnesses questions calling for answers containing hearsay, the defense would have the usual obligation of bringing the hearsay to the attention of the judge by objecting to permitting the answer.

■ The first hearsay complained of by the defendants arose in the testimony of government witness Kristina Montgomery. Neither defendant's lawyer objected to the question asked by the government lawyer or the answer given by the witness. If a party fails to object to the admission of evidence or testimony, we will not reverse unless the trial judge committed plain and prejudicial error in failing to exclude it on his own initiative.[3] *See United States v.*

---

3. This case differs from *United States v. Radeker,* 664 F.2d 242 (10th Cir.1981). There the defendant "properly objected to certain testimony as hearsay." *Id.* at 243. We held that

upon proper objection by the defendant, the trial court, if it admits the testimony, must make the findings required by *Andrews* and *Petersen* whether or not the defendant specifi-

*Amon,* 669 F.2d 1351, 1358 (10th Cir.1981); *United States v. Popejoy,* 578 F.2d 1346, 1350 (10th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978). After examining the record we cannot say that the defendants suffered prejudice sufficient to justify reversal. Nor does the admission of the testimony appear to have compromised the defendants' ability to receive a fair trial in any way. *See United States v. Chaney,* 662 F.2d 1148, 1153–54 (5th Cir. 1981). Other evidence in the case overwhelmingly supported the conspiracy convictions. Furthermore, there are strong indications that the trial court did not rely on the testimony in question. In its oral findings at the conclusion of the case the court stated, "There is no one witness upon whom I rely; in fact, I believe it is largely a documentary case. I believe that the exhibits speak louder than the witnesses in terms of their persuasive effect." R.Supp. I, 8. The court also said it viewed the testimony of immunized witnesses such as Kristina Montgomery "with great caution ... [and] sceptical[ly]." *Id.* Admission of this testimony, when the defendants raised no objection to it, was not plain error requiring reversal.[4]

■ The defendants also complain about testimony given by two undercover policemen, Robert Kaluthkiewicz and Scott Wells, to which they did make timely objections as being hearsay. We believe the trial court properly overruled their objections, however, because the testimony was not hearsay within the meaning of Fed.R.Evid. 801(c) or the common law. The testimony, which described encounters between the officers posing as customers and prostitutes working in the parlors, was limited to describing services the women had offered and what they would charge for those services. The testimony was offered only to show the encounters took place.

AFFIRMED.

cally requests the findings. Thus, the defendant's hearsay objection triggers the application of *Andrews* and *Petersen.* However, if the court is not alerted to the potential hearsay quality of the testimony by a defendant's objection, it need not make findings that would seem to be unrelated to any specific testimony. *Radeker* makes the procedures enunciated in *Andrews* and *Petersen* easily available to defendants. But it does not relieve them entirely of the normal obligation to object to potential hearsay when it is first offered. If the defendant fails to timely object to the proffered testimony, the offer falls under the plain error rule rather than the *Radeker* rule. *See United*

*States v. Harbin,* 601 F.2d 773, 780 (5th Cir.), *cert. denied,* 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 327 (1979). Thus, while we continue to admonish trial courts to follow the procedures set forth in *Andrews* and *Petersen* and to make the required findings clearly on the record, we hold that the trial judge did not commit plain error in this case when the defendants failed to present him with the opportunity to rule on the potential hearsay testimony.

4. The same analysis applies to statements made by government witness Patricia Close, to which the defendants again failed to object at the time they were made.