**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Miguel Angel Nicolas BUCARO,
Defendant-Appellant.**

No. 85–1456.

United States Court of Appeals,
Tenth Circuit.

Sept. 23, 1986.

Roger L. Cossack, Los Angeles, Cal., for defendant-appellant.

Brent D. Ward, U.S. Atty., and Wayne T. Dance, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Before SEYMOUR, MOORE and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

On November 16, 1984, defendant-appellant Bucaro (defendant) was arrested while leaving the scene of a cocaine transaction. He was indicted by a grand jury on November 28, 1984, and convicted by a jury on January 25, 1985, of conspiracy to possess with intent to distribute and conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The sole issue on appeal is whether co-conspirator hearsay was erroneously admitted because there was no independent evidence of the conspiracy. The record reflects substantial, independent evidence of the conspiracy and defendant's participation in it. Accordingly, we affirm.

I.

The testimony and other evidence introduced at trial established the following. On October 26, 1984, Stuart Smith, a narcotics agent for the State of Utah, posing as a cocaine buyer, was introduced to co-defendant[1] Arthur Ortiz by someone known as Leo. The introduction was made at Ortiz' home in Tooele, Utah. After the introduction, Smith negotiated the purchase of two kilograms of cocaine from Ortiz who stated that the cocaine would be supplied by someone from California. Record vol. III at 37.

During the next few weeks, various conversations occurred between Ortiz and agent Smith indicating that Ortiz was making the arrangements for the sale and that he was waiting for the supplier to come to Utah with the cocaine. Telephone calls were made from Ortiz' home to various places in the Los Angeles, California, area, including the defendant's residence, and from Los Angeles to Ortiz' home.

On November 15, 1984, agent Smith met with Ortiz at Ortiz' home to discuss the details of the transaction. During this meeting, Ortiz received a call from the Los Angeles area. The telephone conversation was in Spanish and was interrupted when Ortiz asked agent Smith when the sale was to occur. After the telephone conversation, Ortiz told agent Smith that the cocaine was being transported by automobile and the trip would take approximately 17 hours. Ortiz pointed to the southern California area of a time zone map and indicated that there was a one hour time difference between Utah and the location of the supplier. Agent Smith and Ortiz then agreed that the sale would take place the following day at noon at the Airport Hilton Inn in Salt Lake City, Utah.

Also on November 15, a collect call was made to the Ortiz home from a gas station located four-tenths of a mile from defendant's home in Los Angeles. At about 8:00 p.m. that evening, defendant rented an automobile from Budget Rent-a-Car in Los Angeles. He drove with a friend through the night, finally arriving at Ortiz' house at about 10:00 a.m. on November 16.

Agent Smith spoke with Ortiz by telephone on the morning of November 16 and was told that his supplier had arrived and that the cocaine would be delivered as planned. Narcotics agents observed Ortiz driving toward the Hilton Inn at about 1:00 p.m., followed by another automobile with California license plates. The two automobiles entered the hotel's parking lot, and defendant was identified as the driver of the vehicle with the California license plates.

Ortiz met agent Smith in a room in the hotel while defendant stood near the hotel's entrance and surveyed the area, particularly watching Ortiz' automobile. Agent Smith and Ortiz returned to the hotel's parking lot to get the money and cocaine. Defendant and his companion were seen slowly driving in front of the hotel watching agent Smith and Ortiz. Ortiz took a quantity of cocaine from the trunk of his automobile and was arrested thereafter.

---

1. Although defendant and Ortiz were listed in the same indictment, they were given separate trials.

Defendant and his companion were arrested several blocks from the hotel.

After his arrest, defendant was searched. A small quantity of cocaine was discovered concealed in his wallet. A rental agreement from Budget Rent-a-Car in Los Angeles also was found. A chemical analysis revealed that the cocaine found on defendant had the same purity and was diluted with the same substance (Inositol) as the cocaine possessed by Ortiz. A search of the Ortiz home revealed a clothes bag with a white tag displaying defendant's name on it.

## II.

■ Fed.R.Evid. 801(d)(2)(E) excludes from the hearsay prohibition "statement[s] by a co-conspirator of a party during the course and in furtherance of the conspiracy." The rule embodies a long-standing doctrine, applicable in both civil and criminal cases, founded on general principles of agency and partnership law:

> [W]hen any number of persons associate themselves together in the prosecution of a common plan or enterprise, lawful or unlawful, from the very act of association there arises a kind of partnership, each member being constituted the agent of all, so that the act or declaration of one, in furtherance of the common object, is the act of all, and is admissible as primary and original evidence against them.

*Hitchman Coal & Coke Co. v. Mitchell,* 245 U.S. 229, 249, 38 S.Ct. 65, 71, 62 L.Ed. 260 (1917); *See also United States v. Renda,* 56 F.2d 601, 602 (2d Cir.1932). This hearsay exception is available, however, only if there is substantial evidence, independent of the statements at issue, that a conspiracy existed, that the co-conspirator declarant and defendant were members of the conspiracy, and that the statement was made during the course and in furtherance of the conspiracy.[2] *United States v. Petersen,* 611 F.2d 1313, 1330–31 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2986, 64 L.Ed.2d 854 (1980); *United States v.*

*Andrews,* 585 F.2d 961, 964 and 966 (10th Cir.1978). Substantial, independent evidence has been described as more than a scintilla; it is evidence that a "reasonable mind would accept as adequate to support a conclusion." *United States v. Petersen,* 611 F.2d at 1330 n. 1. Evidence will be substantial even though it might lead to two inconsistent conclusions. *Id.*

■ What must be proved by "substantial, independent evidence" is that a combination existed between third parties and the defendant. It is not necessary, however, for the government to prove that the conspiracy was for unlawful purposes. "The element of illegality may be shown by the declarations themselves." *Hitchman Coal & Coke Co. v. Mitchell,* 245 U.S. at 249, 38 S.Ct. at 71. Although the conspiracy must be proved by a preponderance of the evidence in order for the co-conspirator hearsay exception to be available, *United States v. Petersen,* 611 F.2d at 1330, it need not be proved by direct evidence. The existence of a conspiracy may be inferred from circumstantial evidence. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Watson,* 594 F.2d 1330, 1339 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Whether the requisite evidence has been produced is a legal decision for the trial judge to make. *United States v. Nixon,* 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 3104 n. 14, 41 L.Ed.2d 1039 (1974). Because the issue is a legal one, we review the district court's conclusion de novo. *See generally* 5A J. Moore and J. Lucas, Moore's Federal Practice § 52.03[2] (1986).

■ Having stated these rules, we conclude that they were followed and the hearsay testimony was properly admitted. We have reviewed the entire record and find substantial, independent evidence that a conspiracy existed and defendant was a party to it. Independent testimony and evidence indicates that numerous calls were made during the drug transaction pe-

---

**2.** Defendant specifically challenges the court's finding that he was a member of the conspiracy.

riod between Ortiz and places in the Los Angeles area associated with defendant. Record vol. IV at 181–91, vol. V at 271 and 314–22. On the evening before the cocaine sale was to be consummated, defendant rented a car and drove all night to Tooele, Utah. Record vol. V at 308 and 243. He arrived at the Ortiz home about 10:00 a.m. on November 16, record vol. V at 243, met with Ortiz, and two and one-half hours later, left the house with Ortiz. Record vol. V at 246.

At about 1:00 p.m., defendant was observed by a narcotics agent following Ortiz to the hotel where the cocaine transaction was to occur. Record vol. IV at 195. Defendant and Ortiz arrived at the hotel at approximately the same time, record vol. V at 294, and while Ortiz was in the hotel finalizing the cocaine transaction, defendant was seen standing in the entrance to the hotel surveying the general area and watching Ortiz' parked automobile which contained the cocaine. When Ortiz returned with agent Smith to get the money and cocaine from the cars, agents observed defendant driving slowly in front of the hotel looking in the direction of the transaction. Record vol. IV at 212. Defendant was apprehended several blocks from the hotel, and cocaine was found on his person. Record vol. IV at 127. The cocaine was determined to be identical chemically to the cocaine seized from sale at the hotel. Record vol. V at 345 and 349.

The facts described above are taken from testimony, documentary evidence such as telephone toll records, and physical evidence including the cocaine. This evidence, albeit circumstantial, is sufficient to justify a finding that the defendant was acting pursuant to a common plan and purpose and that he was a member of this drug conspiracy.

### III.

Because we find substantial, independent evidence that defendant was a party to the conspiracy to possess and distribute cocaine, we conclude that the district court did not erroneously admit co-conspirator hearsay testimony. There is no basis for overturning defendant's conviction and, therefore, the district court's judgment is AFFIRMED.