**UNITED STATES of America, Appellee,**

**v.**

**Theodore James COOK and Robert W. Olson, Appellants.**

Nos. 85–1746, 85–1796.

United States Court of Appeals, Tenth Circuit.

June 20, 1986.

---

**562**

Roger W. Redman, Aurora, Colo., submitted a brief, for appellant Cook.

Norman R. Mueller, Haddon, Morgan & Foreman, Denver, Colo., for appellant Olson.

William D. Welch, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty. and Dawn Bowen, Asst. U.S. Atty., with him on the brief), for appellee.

Before HOLLOWAY, Chief Judge, BALDOCK, and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge.

Appellants Theodore J. Cook and Robert W. Olson (collectively "appellants")[1] appeal from judgments of conviction entered May 20, 1985 in the District of Colorado, John P. Moore, *District Judge.* Following a jury trial, appellant Cook was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1982) and appellant Olson was convicted of conspiracy to distribute cocaine, distribution of cocaine, and use of a communication facility to aid in the distribution of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), 843(b) (1982).

We find that the principal questions appellants raise on appeal are: (1) whether the indictment should have been dismissed because of the government attorney's disclosure of certain grand jury transcripts to two state police officers who were aiding in

---

* Of the Second Circuit, by designation.

1. Although appellants filed separate appeals, they were tried together and make similar arguments on appeal. We therefore consolidate both appeals in this opinion. *See* Fed.R.App.P. 3(b).

the investigation; and (2) whether certain electronic surveillance evidence should have been suppressed because it was obtained with a warrant that was supported by an affidavit that contained some information allegedly procured in violation of state law. Appellant Olson also argues that his Fifth Amendment privilege not to testify was violated by the government attorney's comments in summation on Cook's failure to testify. Appellant Cook also argues that certain taped conversations should not have been admitted in evidence at trial.

For the reasons stated below, we affirm the convictions.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

In December 1982 the Grand Junction (Colorado) Police Department began an investigation into the suspected gambling activities of Robert Hakel. Aside from visual surveillance, the state police used telephone toll records obtained with a search warrant and a pen register to record the local numbers called on Hakel's phone. The use of the pen register was authorized by a state court order, but no search warrant was issued for it.[2] As this surveillance began to yield results, the focus of the investigation shifted from gambling to cocaine distribution. Federal authorities were notified. By June 1983 the Federal Bureau of Investigation ("FBI") had assumed primary responsibility for the investigation. In November 1983 the FBI obtained a search warrant for the installation of a wiretap on Hakel's telephone and an electronic eavesdropping device in his apartment. Finally, on January 10, 1984 physical searches of Hakel's residences were conducted by warrant and 884 grams of cocaine were seized.

On the basis of this information, Hakel and four other persons, including appellants, were indicted by a federal grand jury on October 18, 1984. The indictment charged appellant Cook with conspiracy to distribute cocaine and distribution of cocaine. The indictment charged appellant Olson with conspiracy to distribute cocaine, distribution of cocaine, and use of a communication facility to aid in the distribution of cocaine. Only the two appellants went to trial under the indictment.

Appellants' trial began on April 15, 1985 and was concluded on April 19, 1985. The government presented overwhelming evidence to prove that appellants were integral members of Hakel's cocaine distribution network. This evidence consisted of numerous taped conversations between Hakel and Cook and between Hakel and Olson in which every possible aspect of cocaine distribution was discussed—from the appropriate price mark-up to the mechanics of delivery. Aside from this damning evidence, four witnesses testified to having participated in cocaine sales with appellants. Law enforcement agents also testified to the surveillance techniques used and to having observed appellants, whom they identified in court, participating in drug related transactions. Appellants' defenses consisted chiefly of cross-examination designed to cast doubt on the witnesses' identifications and the voice identifications of the tapes. Appellant Olson presented one witness to dispute Olson's participation in certain transactions. Neither appellant testified on his own behalf.

At the close of all of the evidence, the court directed a verdict of acquittal on the distribution count in Cook's indictment, but submitted the remaining counts to the jury. The jury found appellants guilty as charged on all remaining counts. After denying motions for a new trial, Judge Moore on May 20, 1985 entered judgments of conviction. Cook was sentenced to a ten year term in prison on the conspiracy to distribute cocaine count, to be served consecutively to a state prison term. Olson

---

**2.** Prior to June 27, 1983 it was the standard practice of the Colorado state police to install pen registers on court order, but without a search warrant. A search warrant was issued for the instant pen register in August 1983. *See* discussion, *infra*, II B.

was sentenced to three concurrent three year terms in prison on the cocaine counts and to a consecutive five year term of probation on the count which charged him with use of a communication facility to aid in the distribution of cocaine. These appeals followed.

## II.

Appellants in their briefs have presented a veritable laundry list of claims of error. In the balance of this opinion, we shall discuss seriatim what we have referred to above as appellants' principal questions, followed by appropriate discussions of what we regard as appellants' subordinate questions.

### A. *Disclosure of Grand Jury Transcripts*

■ Appellants argue that the indictment should have been dismissed because the government attorney in charge of the case showed certain grand jury transcripts to two Colorado state police officers who were assisting in the investigation. Appellants argue that this "breach" of grand jury secrecy violated Fed.R.Crim.P. 6(e)(2).[3] The government concedes that it showed the state police officers portions of the grand jury transcripts in mid-1984, but states that it permitted the officers to read the transcripts only in the United States Attorney's office and permitted no notes or copies to be made. The government defends its actions on two grounds. First, it

argues that, since the two state police officers were deputized as Special Deputy United States Marshals prior to the disclosure, the officers were federal "government personnel" within the meaning of the exception provided by Rule 6(e)(3)(A)(ii)[4] and therefore were permitted access to the transcripts at the government attorney's discretion. Second, the government argues that, even if the officers cannot be considered federal officers, the "government personnel" exception is meant to include state government personnel as well. While this second argument presents an interesting question which has split the district courts that have considered it, *compare In re 1979 Grand Jury Proceedings*, 479 F.Supp. 93, 95–96 (E.D.N.Y.1979) (state and local government personnel included within exception) *with In re Grand Jury Proceedings*, 445 F.Supp. 349, 350 (D.R.I.1978) (state and local government personnel not included within exception), we need not decide the question since we find the government's first ground to be dispositive in the instant case.

As a threshold matter, we agree with both sides in the instant case that the disclosure of grand jury testimony here is covered by the grand jury secrecy guaranteed by Rule 6(e) and more specifically by the "government personnel" exception provided by subsection (e)(3)(A)(ii). *United States v. Tager*, 638 F.2d 167, 169 (10th Cir.1980). We see no reason, however,

---

**3.** Rule 6(e)(2) provides:

"**(2) General Rule of Secrecy.** A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court."

**4.** Rule 6(e)(3)(A)(ii), as in effect when the disclosures took place, provided:

"**(3) Exceptions.**
(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand

jury, other than its deliberations and the vote of any grand juror, may be made to—

.         .         .

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law."
In 1985 this subsection of the Rule was amended to include expressly state government personnel within the term "government personnel". This amendment became effective on August 1, 1985 and is not dispositive in the instant case. It is interesting to note, however, that the Advisory Committee viewed this amendment as a "clarification" of the subsection rather than a new direction in the exception's scope.

why Special Deputy United States Marshals should not be included within even the most restrictive definition of "government personnel". Both officers were duly deputized as Special Deputy United States Marshals in February 1984, prior to any of the disclosures. Appellants do not challenge the authority of the United States Marshal to create special deputies. Moreover, appellants do not challenge the government's assertion that the officers were needed to aid in the investigation and that the disclosures were necessary to effective aid.[5] Rather, appellants argue that the officers' continuing status as state employees prevents them from being considered federal "government personnel" under what appellants characterize as the "proper" reading of the exception. We are willing to assume without deciding that only federal personnel come under the exception provided by Rule 6(e)(3)(A)(ii). We decline, however, to give that subsection the wooden reading appellants suggest. It is clear from the record that the two officers performed significant duties in their roles as Special Deputy United States Marshals, including serving subpoenas and assisting in trial preparation. It is equally clear that the grand jury transcripts were provided to the officers only to aid them in the performance of their duties as Special Deputy United States Marshals. There is no evidence whatsoever to suggest that the officers misused the information or leaked it to another investigation. With respect to the disclosures, therefore, the officers acted only as federal personnel and their "dual" status as state personnel is irrelevant to our Rule 6(e) inquiry.[6]

We hold that the disclosure of certain grand jury transcripts to the two state police officers who were acting as Special Deputy United States Marshals to aid in the federal investigation was within the

government personnel exception of Rule 6(e)(3)(A)(ii).

B. *Admissibility of Evidence Obtained With a Warrant that Was Supported In Part by Information Allegedly Procured in Violation of State Law*

Appellants argue that, since a portion of the information contained in the government's affidavit in support of the search warrant used to tap Hakel's telephone and eavesdrop on his apartment was obtained by the use of a pen register on Hakel's telephone installed without a warrant, and the use of the pen register without a warrant was in violation of state law, the evidence obtained pursuant to the search warrant should have been suppressed.

■ While the United States Constitution does not require a search warrant to install a pen register, *Smith v. Maryland,* 442 U.S. 735 (1979), the Colorado Supreme Court held on June 27, 1983 that the Colorado Constitution requires that a search warrant based on probable cause be issued prior to the installation of a pen register. *People v. Sporleder,* 666 P.2d 135 (Colo.1983). At the time *Sporleder* was decided, the state police were using a pen register on Hakel's phone under a court order, but without a search warrant. The police promptly disconnected the pen register in late June 1983 because of the *Sporleder* decision. The pen register was not reconnected until August 1983 when a search warrant was obtained.

In large part appellants' argument relies on our decision in *United States v. McNulty,* 729 F.2d 1243 (10th Cir.1984) (en banc), in which we held that a wire tap order obtained in a state court must comply with both state and federal wire tap statutes in order to use the wire tap evidence in a federal prosecution, even if the state stat-

---

**5.** Of course, under Rule 6(e)(3)(A)(ii) it is the government attorney who is charged with determining who is "necessary" to assist him in carrying out his duties.

**6.** While the government admitted that one of its goals in deputizing the officers was to bring

them within a narrow reading of the government personnel exception, this cautious approach does not detract from the officers' primary function as assistants in the ongoing federal investigation.

ute requires more of a showing than the federal statute. Although appellants' *McNulty* argument raises some interesting technical questions, we need not reach them since we hold that the search warrant properly could have issued even without the pen register information. First, it is not entirely clear how much of the information obtained from the pen register was used in the affidavit in support of the search warrant. While an FBI agent did testify at the suppression hearing that he used information gleaned from the pen register in preparing the affidavit, he also stated that he had relied on some of the same informants the state officers had used to obtain the court order for the pen register. Clearly, the use of these informants' information is not tainted by the subsequent pen register installation. Second, as the district court found, any pen register-generated information was a "small part" of the probable cause showing. The affidavit was based for the most part on reliable informants' tips and the results of non-pen register surveillance.

■ We hold that the totality of these circumstances established probable cause for the search warrant even absent the "tainted" pen register-produced information. *See Illinois v. Gates,* 462 U.S. 213, 238 (1983). The district court was correct in denying appellants' suppression motion.

### C. *Olson's Fifth Amendment Privilege Not to Testify*

■ Appellant Olson argues that the prosecutor's comments on *Cook's* failure to testify violated *Olson's* Fifth Amendment privilege not to testify. In his summation Cook's counsel, over objection, "explained" to the jury why Cook had not testified. Aside from telling the jury that such testimony was unnecessary because the government had the burden of proving Cook's guilt, Cook's counsel also told the jury that it could infer that it was not Cook's voice on the tapes from the fact that the government had not called Cook to the stand to speak so the jury could compare the voices.

After the court denied Olson's motion to have the government respond to Cook's summation before Olson's summation, Olson's counsel gave his summation and made no mention of Olson's or Cook's failure to testify. The government then gave its summation. Among other things and over Olson's objection, the government attorney responded to Cook's counsel's comments on Cook's failure to testify by stating:

> "One other comment. I am limiting carefully, understand, I am limiting my comments to Mr. Long's argument on behalf of Mr. Cook, and no way apply to Mr. Olson. The fact remains Mr. Long argued that he made the decision, he first said to you, how come we didn't have somebody that knew Jim Cook identify his voice? How come the government didn't have him stand up in the courtroom and read from 'Time' magazine? How come the government didn't do this?
>
> And then he says, 'Now, then, let me tell you why the man didn't testify,' and he gave the reasons.
>
> I'm going to tell you why he didn't testify. I'm going to tell you why he didn't testify. Because you would have heard his voice. Don't you understand that?
>
> The second reason is he would be subject to cross-examination. 'Where are your cars, Mr. Cook? Where were your cars on such and such a night? Who was driving your cars, Mr. Cook?'
>
> That's the reason. There wouldn't be any doubt in your mind, as to whose voice was on that tape, whether it's his or not, if he testified. That's the reason he didn't testify. He didn't want you to hear his voice."

Appellant Olson argues that these comments "spilled over" onto his (Olson's) failure to testify and violated his Fifth Amendment privilege. We disagree.

We have held that in order for a comment to be considered a reference to a defendant's failure to testify the comment must have been "manifestly intended or

... of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir.1955). We hold that the remarks set forth above do not meet this threshold test with respect to *Olson's* failure to testify.[7] Not only did the prosecutor carefully preface his remarks by stating that they applied only to Cook's counsel's summation comments, but the remarks themselves clearly were directed at Cook's conduct only. Since it is obvious that the remarks were intended to refer only to Cook's failure to testify and we cannot say that the jury naturally and necessarily would take the remarks to refer to Olson's failure to testify, we hold that the remarks cannot be considered a comment on Olson's failure to testify.

Moreover, even if there were any spillover effect, it surely would be harmless error beyond a reasonable doubt. Aside from the overwhelming evidence of Olson's guilt, which included incriminating taped conversations and eye witness testimony, the remarks were only a small part of the government's summation. The court instructed the jury not to consider the defendants' failure to testify as indicative of guilt. In the alternative, therefore, we hold that, if any spillover occurred, the government has shown beyond a reasonable doubt that the spillover had no effect on the jury's determination. *Chapman v. California,* 386 U.S. 18, 24 (1967).

### D. *Evidentiary Rulings*

■ Appellant Cook claims that the district court abused its discretion in admitting in evidence many of the tapes of conversations between Hakel and Cook. He asserts that the government failed to establish the proper voice identification foundation for the tapes. This claim is without merit.

We have held that the admission of tape recorded conversations is subject to the Federal Rules of Evidence and that "[t]his means that a proper foundation must be laid for their admission, and that they must be relevant and not privileged." *United States v. Watson,* 594 F.2d 1330, 1334 (10th Cir.), *cert. denied,* 444 U.S. 866 (1979). As Cook points out, part of this foundation is a threshold showing of the identity of the speakers. *Id.* at 1335. We have held, however, that, while testimony by one who is familiar with the speakers' voices is "one example" of such a showing, *id.; see also* Fed.R.Evid. 901(b)(5), circumstantial evidence such as name references during the conversation and pen register records of the numbers called is a sufficient voice identification foundation. *United States v. Cox,* 449 F.2d 679, 689 (10th Cir.1971).

In the instant case the government adduced both types of voice identification evidence. FBI agent Marr, who was in charge of most of the electronic surveillance, testified that he could identify Cook's voice by a number of means. First, Marr testified that for the taped telephone conversations the pen register told him the phone number Hakel was calling. Second, Marr testified that often the parties would identify themselves during the course of the conversation by either stating their names or the names of family members and their relationships. Third, Marr testified that he actually had heard Cook and Hakel speak to each other while he was conducting visual surveillance and could remember their voices. Clearly, this testimony established not only the circumstantial foundation upheld in *Cox, supra,* 449 F.2d at 689, but also established the voice familiarity showing envisioned in *Watson, supra,* 594 F.2d at 1335. Once this threshold showing was made, it was for the jury to determine if the voice actually was Cook's. *Watson, supra,* 594 F.2d at 1335 (once "*any* basis for identifying the voice" has been shown, questions of weight and credi-

---

**7.** Appellant Cook has not challenged the remarks as an encroachment on *his* (Cook's) Fifth Amendment privilege not to testify.

bility are for the jury) (emphasis in original).

We hold that a sufficient voice identification foundation was laid and that the court properly admitted the tapes.

Cook also argues that the district court abused its discretion in admitting the tapes and transcript of a particular conversation between Cook and Hakel which took place on December 4, 1983. Cook argues that under Fed.R. Evid. 403 this conversation was unfairly prejudicial to him because of his threats to murder an accomplice and his reference to a past drug-related arrest. This claim also is without merit.

First, in reviewing a district court's ruling on a Rule 403 motion our standard is quite deferential. A clear abuse of discretion must be shown. Second, by the Rule's own terms, relevant evidence should be excluded only if its unfair prejudicial effect "substantially outweigh[s]" its probative value. In the instant case, we find no error in the court's ruling in light of the contents of the conversation in question. While Cook did mention killing a confederate if he failed to cooperate and Cook did mention a prior arrest, by far the greater part of the conversation concerned the appropriate profit margin and distribution scheme for the cocaine. The bulk of this conversation, therefore, was highly relevant to the conspiracy charge. Moreover, the asserted prejudicial effect of the threatened killing and prior arrest reference was significantly diminished by their rambling, incredible nature. We cannot say that the district court abused its discretion in finding the conversation more probative than prejudicial. While the court could have given a limiting instruction or have excised the inflammatory portions of the conversation, Cook did not request those remedies. He gambled instead on total exclusion, and cannot now claim as error on appeal the court's failure to do what his trial counsel failed to request.

We hold that the court properly admitted the tapes and transcript.

## III.

To summarize:

We affirm appellants' convictions. The government's disclosure of certain grand jury transcripts to two state police officers did not violate the grand jury's secrecy guaranteed by Fed.R.Crim.P. 6(e). Since the officers were Special Deputy United States Marshals and aided in the investigation, they were properly permitted access as "government personnel" under Rule 6(e)(3)(A)(ii). The court was correct in not suppressing certain electronic eavesdroping evidence obtained by search warrant. Although a small part of the information in an affidavit used to obtain the warrant may have been obtained in violation of state law, a sufficient showing of probable cause was made even without the allegedly tainted information. Olson's Fifth Amendment privilege not to testify was not infringed by the prosecutor's remarks in summation on Cook's failure to testify. The remarks logically cannot be viewed as a reference to Olson's failure to testify. Even if there was any spillover effect from the remarks, it was harmless error in view of the overwhelming evidence of Olson's guilt. Cook's claims regarding the admissibility of certain taped conversations are without merit. A proper voice identification foundation for the tapes was laid, using both direct and circumstantial evidence of Cook's identity. The probative value of a conversation containing a murder threat and a prior drug arrest reference far outweighed its possible prejudicial effect. In the last analysis, appellants were convicted of trafficking in cocaine by a properly instructed jury based on overwhelming evidence of guilt at an ably administered trial. Appellants have raised no claims of error that merit disturbing this just result.

AFFIRMED.