**UNITED STATES of America, Plaintiff,**

v.

**Juan NUNEZ, Corky Nunez, Anna Irene Martinez, Richard Nunez, Charles Nunez, Ellen Nunez, Andrew Torres, Christine Benavidez, and, Cristobal Ramirez, Defendants.**

**No. 86–CR–155.**

United States District Court,
D. Colorado,

April 28, 1987.

---

William Welch, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Neil D. O'Toole, Denver, Colo., for Juan Nunez.

Arthur S. Nieto, Denver, Colo., for Corky Nunez.

Sander N. Karp, Denver, Colo., for Anna Irene Martinez.

Peter L. Edwards, Englewood, Colo., for Richard Nunez.

Harvey Steinberg, Denver, Colo., for Charles Nunez.

Marc P. Mishkin, Denver, Colo., for Ellen Nunez.

Richard Stuckey, Denver, Colo., for Andrew Torres.

Nina A. Iwashko, Denver, Colo., for Christine Benavidez.

Thomas P. Johnson, Denver, Colo., for Cristobal Ramirez.

## ORDER ON PENDING MOTIONS

KANE, District Judge.

### I.

### INTRODUCTION

Defendants have been indicted for allegedly violating, *inter alia,* Title 21 U.S.C. §§ 841(a)(1) and 846 by conspiring to possess and distribute heroin into the Department of Corrections of the State of Colorado. Several of the defendants have also been indicted for using the telephone and mail service in furtherance of the said conspiracy. The thirty-three count Superseding Indictment charges twenty defendants with being involved in the conspiracy. To date, eleven of those defendants either have negotiated a plea with the U.S. Attorney's Office or have been dismissed. The remaining nine defendants are scheduled to stand a three-week trial beginning May 11, 1987.

Since May of 1986, there have been more than 150 motions filed in this case. At various times throughout the past year, I have held hearings on this barrage of motions. Although I have ruled on most of the motions from the bench and by minute order, several motions have been taken under advisement. I now rule on those remaining pretrial motions.

### II.

### PENDING MOTIONS

It would be too cumbersome and redundant to set forth each of the various pending motions filed by each defendant, especially since many of the motions are similar. To avoid such duplication, I have grouped the motions according to their respective subject categories. To the extent any motion is sufficiently unique to warrant individual attention, I address the motion specifically.

1. All defendants have filed motions to suppress either wiretap statements, other evidence, or both.

A. *Motions to Suppress.*[1]

There are three types of motions to dismiss in this case: (1) Motions to suppress evidence arising from a court-authorized wire communication intercept (wire-tap); (2) Motions to suppress statements of moving defendants and/or co-conspirators and corresponding motions for a hearing to determine the admissibility of co-conspirator hearsay statements; and, (3) motions to suppress evidence seized in the search executed at the Colorado State Penitentiary.

(1) *Motions to suppress evidence arising from a court-authorized wire communication intercept (wire-tap).*

### RELEVANT FACTS

On May 20, 1985, defendants assert Denver Police Officer Gary E. Salazar and Drug Enforcement Administrative Agent Eduardo Martinez filed an affidavit in support of an application for an Order authorizing a wire-tap under 18 U.S.C. § 2515, *et seq.* The necessary affidavit is 105 pages and avers principally to hearsay statements made by confidential sources. The affiants speak at great length of the criminal convictions and arrests of the targets of the wire-tap. The affidavit was accompanied by an application for electronic surveillance of wire communications which was signed by Assistant U.S. Attorney David J. Thomas and dated May 20, 1985. Chief Judge Finesilver issued an order authorizing the interception of wire communications on the telephone number 427–9678.[2]

On May 20, 1985, the order was signed by Judge Finesilver at 8:25 a.m., however, the affidavit in support of the request for the order was not signed until 8:30 a.m. At this point, the facts, or, perhaps stated more correctly, the factual inferences to be drawn from those facts, are disputed.

Defendants argue there is no record as to the time Judge Finesilver received the affidavit for review. Accordingly, defendants reason Judge Finesilver was not af-

2. The telephone number was that of Antonio Nunez who was the alleged leader of the conspiracy and who has since negotiated a plea with the U.S. Attorney's Office.

forded sufficient time to make the necessary review of the affidavit and consequently could not have determined there was any probable cause to justify the order.

The government contends, however, that, "copies of the application, affidavit, and proposed order authorizing the wire-tap were submitted to Chief Judge Finesilver for his review *several days prior to the appearance of affiants Gary E. Salazar and Eduardo Martinez [the morning of] May 20, 1985.*" (emphasis added). Plaintiff's brief at 1–2.

Thus, according to the government, there was obviously sufficient time for Judge Finesilver to make the necessary determinations of whether probable cause existed.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

a. *The wire-tap authorization order.*

Defendants argue it is apparent *from the times recorded on the documents* that Judge Finesilver was not afforded sufficient time by the affiants to make an informed, deliberate, neutral and detached evaluation of probable cause as set forth in the affidavit. *See United States v. Reivich*, 610 F.Supp. 538 (D.C. Mo.1985) ("deference to the magistrate is not boundless, the reviewing court must still conscientiously review the sufficiency of an affidavit and affirm that a magistrate is not a mere ratification of the bare conclusions of others"). The statute requires there be probable cause for believing that an individual is committing, has committed, or is about to commit a particular offense. *See* 18 U.S.C. § 2515 which prohibits the use of evidence obtained by wire-tap interception when the wire-tap was not duly supported by probable cause or is unlawful for some other similar act or omission.

Logically, where a court orders the authorization of a wire-tap *before* there ever was a sworn affidavit, evidence acquired pursuant to such a court order qualifies as "unlawfully obtained evidence" because no probable cause determination ever could have been made. Thus, an abdication by the magistrate of his role as the neutral and detached evaluator would require suppression of the evidence because such would not have been obtained in compliance with 18 U.S.C. § 2515 and 2518(10)(a).

Although such evidence should be suppressed, defendants' assertions were unsubstantiated at the December 3, 1986, hearing. No evidence was presented to support defendant's speculation that Judge Finesilver signed the order *before administering the oath to the affiants.* The time notations on the order (8:25 a.m.), and on the affidavit (8:30 a.m.), are inconclusive *by themselves.* An equally plausible scenario is that the times merely reflect the moments when Judge Finesilver physically signed the documents but do not reflect the previous administration of the oaths and the signing of the affidavit by affiants Salazar and Martinez.

▇ The defendant has the burden of overcoming the presumed validity of the wire-tap authorization. *United States v. Newman*, 733 F.2d 1395, 1398 (10th Cir. 1984). Defendants' assertion that Judge Finesilver failed to consider properly the affidavit before issuing the order is refuted by the evidence presented at the December 3, 1986, hearing, as well as by the order signed by Judge Finesilver which specifically finds the existence of probable cause. In *United States v. Talbert*, 706 F.2d 464, 466–67 (4th Cir.1983), the court rejected a similar argument where the defense failed to overcome the affiant's uncontradicted testimony that the wire-tap affidavit was properly made under oath. Thus, the presumption of validity remains unrebutted.

▇ Accordingly, the motion is denied with respect to this aspect since defendants have not met their burden of rebutting a presumptively valid order. I hasten to add Judge Finesilver's determination that probable cause existed is subject to review only in the most egregious circumstances. Since it has not been demonstrated that Judge Finesilver failed to make a probable cause determination, the order is presumptively valid. It is important to bear in mind that defendant has only demonstrated the order was physically signed before the affi-

davits were physically signed. Defendant has not demonstrated, however, that Judge Finesilver failed to review copies of the unsigned documents and made a probable cause determination during the days preceeding the May 20, 1985 signing.

In similar circumstances, the District Court for the Eastern District of New York stated:

> Movants suggest that there could have been no probable cause basis for intercepting telephone calls to and from this residence, and that they will be able so to demonstrate from the orders and papers submitted to obtain the orders. They argue that the Court should at least examine the orders, and the applications for them, *in camera* and determine whether the papers met the probable cause requirements of Section 2518(3)(a), (b), and (d). But that *in camera* or *ex parte* examination of the basis of the order was the very role which the judge signing the order performed as required by section 2518(1), (2), (3), (4), and (5). There is no room for an argument that a second judge should track the steps of the judge who issued the order in the hope that the two might disagree. Judges of coordinate jurisdiction do not, except in the most extraordinary situations, have the function of reviewing each other's orders.

*In the Matter of the Wire Interception of Oral Communications of Al Perisco, et al.*, 362 F.Supp. at 713, 714 (E.D.N.Y.1973). *See also Fiumara v. United States*, 727 F.2d 209 (2nd Cir.) *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984) (Defendant's claim that a judge's order for wire-tap did not comply with statutory requirements was neither jurisdictional nor constitutional in nature and did not constitute a fundamental defect which inherently resulted in a complete miscarraige of justice; thus, the claim was not cognizable under the statute governing the motions).

b. *Probable cause.*

Next, defendants argue there was no probable cause in this case to justify the wire-tap authorization under the "totality of the circumstances" test found in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Defendants object to the non-corroboration of the anonymous tip information. Defendants cite at length language from *Illinois v. Gates*, and other cases following the totality of the circumstances test, stating the importance of corroborating such hearsay testimony, e.g., "[d]ecisions applying the totality of the circumstances analysis have consistently recognized the value of corroboration of details on an informant's tip by independent police work." *Gates, supra.*

■ Contrary to defendants' assertion, there clearly was the requisite amount of probable cause from 1982 through 1985. First, each informant's basis of knowledge was derived from either personal observations, conversations with defendants and others, or heroin purchases made from one of the defendants or an indicted Nunez distributor. Second, the reliability of each informant was established by his or her performance with respect to reliable narcotics information previously provided to the police. The information included names, addresses, telephone numbers, specific methods and networks of distribution, quantities of heroin sold, sources, etc. Third, the veracity of each informant was established through substantial corroboration of the information provided. The information provided by each informant was corroborated by the same information provided by other informants. *See United States v. Landis*, 726 F.2d 540, 543, (9th Cir.1984) *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984) (interlocking tips from different informants enhances the credibility of each).

Perhaps most convincing is that: (1) the police checked names given and ascertained the substantial narcotics involvement of the defendants; (2) defendants were identified; (3) pen register and telephone toll records verified communications among the various defendants; (4) controlled purchases of heroin were made by an informant from the primary defendant; (5) police conducted surveillance corroborating the actions reported by the informants; and, (6) other police investigations provided infor-

mation dovetailing and corroborating the information provided by the informants in this case.

What is important to bear in mind is the nature of the totality of the circumstances test to determine probable cause. As stated by the Court in *Illinois v. Gates, supra:*

> In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Id.* 462 U.S. at 231, 103 S.Ct. at 2328.

Lastly, the May 1985 affidavit in the instant case establishes a continuous course of conduct from 1982 through April of 1985. Thus, defendant's contention that the information in the affidavit was "stale" is meritless.

c. *Other alleged deficiencies with the order.*

■ On a more general level, various defendants challenge the use of pen registers and intercepted wire communications as violative of the Fourth, Fifth, and Sixth amendments. The caselaw, however, clearly holds against their position: (1) There is no Fourth Amendment violation in using pen registers and wire-taps in these situations—*United States v. Cox*, 449 F.2d 679, 685–87 (10th Cir.1971), *cert. denied,* 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972); (2) There is no Fifth Amendment violation in using these methods since the communications are "voluntary"—*Hoffa v. United States*, 385 U.S. 293, 303–304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966); and finally, (3) The use of wire-tap evidence is not prohibited under the Sixth Amendment right to counsel unless it can be shown that authorized intercepted communications were obtained at a time when the right to the presence of counsel had attached (and it had not yet attached in the instant case)—*Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

Accordingly, all motions to suppress wire-tap evidence are denied.

Further, defendant Richard Nunez' motion to suppress interception communications for failure to serve inventory is denied. He had been provided full discovery and is not prejudiced despite his allegations to the contrary.

(2) *Motions to suppress statements of moving defendants and/or co-conspirators and hearing to determine admissibility of co-conspirator hearsay statements.*

a. *Motions to suppress statements of moving defendants.*[3]

Defendant Ellen Nunez asserts her statements made to officers Martinez and to Assistant U.S. Attorney David Thomas on August 19, 1985, should be suppressed because they were the products of a custodial interrogation. She further alleges her statements were involuntary and obtained "without *Miranda,*" thus violating her Fifth and Sixth Amendment rights.

At the hearing, it was determined that on August 19, 1985, defendant Ellen Nunez contacted the U.S. Attorney's Office by telephone and stated she wished to speak with agents about the Nunez heroin conspiracy. She voluntarily appeared at the office nearly three hours later, was advised of her *Miranda* rights, and was told she need not stay or speak with anyone. Nevertheless, she freely spoke to the agents and to David Thomas providing incriminating information about herself and the Nunez organization. Several days later she recanted her statement.

■ There was no constitutional violation of Ellen Nunez' constitutional rights because she was never "in custody" nor "interrogated" on August 19, 1985. She freely left the office after her conversation with the agents and the assistant U.S. attorney. Moreover, she instigated the contact with the authorities. A voluntary, non-custodial statement made with the benefit of *Miranda* warnings is simply not a

---

**3.** Christine Benavidez' motion to suppress statements is moot because the government has stated she made no statements at the time of her arrest.

statement or admission obtained in violation of established law. *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

Thus, defendant's motion to suppress statements of Ellen Nunez is denied.

b. *Motions to suppress statements of co-conspirators and motion for a hearing to determine the admissibility of co-conspirator hearsay statements.*

These motions are denied for the following reasons.

(i) *Co-conspirator statements.*

■ Statements of a co-conspirator made during the course of a conspiracy may be used to establish the existence of the conspiracy "by the direct testimony under oath of a party to it," and such testimony is not hearsay within the meaning of Rule 801(d)(2)(E), Fed.R.Evid. *United States v. Smith,* 692 F.2d 693, 698 (10th Cir.1982); *United States v. Du Friend,* 691 F.2d 948, 951 (10th Cir.1982).

Where the co-conspirator statement constitutes hearsay pursuant to Rule 801(d)(2)(E), the Tenth Circuit has adopted the "preferred order of proof" rule requiring the government to establish, before the admission of co-conspirator hearsay statements, the following: (a) that a conspiracy existed; (b) that the declarant and the defendant against whom the hearsay statement is offered were members of the conspiracy; and, (c) that the statement offered was made during the course of, and in furtherance of, the conspiracy. *United States v. Peterson,* 611 F.2d 1313, 1330 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1979); *United States v. Andrews,* 585 F.2d 961 (10th Cir.1978). Accordingly, the government shall abide by this rule and be subject to its restrictions and prerequisites.

(ii) *James hearing.*

This preferred order of proof rule which has been adopted by the Tenth Circuit in *Peterson, supra,* followed the procedure earlier announced in *United States v. James,* 590 F.2d 575 (5th Cir.1979) (*en banc*) (hence, the term *"James* hearing"). Subsequent Fifth Circuit opinions make plain, however, that a *"James* hearing" need not be conducted *before trial nor even outside the presence of the jury,* e.g., *United States v. Ricks,* 639 F.2d 1305, 1309. (5th Cir.1982).

Further, the Tenth Circuit has held that the trial court is not required to determine the admissibility of co-conspirator statements before trial. As the court stated in *United States v. Monaco,* 700 F.2d 577, 581 (10th Cir.1983):

We think the judge properly refused the motion in limine [to determine admissibility of co-conspirator hearsay testimony] because a trial court has no obligation to determine admissibility of possible hearsay at the pretrial stage.

■ This rule was recently reiterated in *United States v. Mabry,* Nos. 85–2322, 2347, and 2337, slip. op. 809 F.2d 671 (10th Cir.1987). Because no compelling circumstances are present to justify a pretrial hearing, the defendants' several motions for a *James* hearing are denied.

(3) *Motions to suppress evidence seized in a search executed at the Colorado State Penitentiary.*

■ Corky Nunez has filed a motion to suppress evidence seized from his cell at the Colorado State Penitentiary. He asserts there was no probable cause to justify the issuing of a search warrant nor the search of his cell pursuant to that search warrant. Defendant has failed, however, to demonstrate *how* the search warrant is invalid. Because a search conducted pursuant to a warrant is presumptively lawful, the burden is on the defendant to show any invalidity. *Samuels v. McCurdy,* 267 U.S. 188, 199, 45 S.Ct. 264, 267, 69 L.Ed. 568 (1925). Corkey Nunez has not carried that burden. For this reason alone, the motion is denied.

■ Notwithstanding the validity of the search warrant, in the instant case the government was not even required to obtain a warrant before searching Nunez'

cell. A prisoner's expectation of privacy in his cell is limited. *United States v. Ready*, 574 F.2d 1009, 1014 (10th Cir.1978). The search conducted in this case was reasonable, for a valid purpose, and not conducted for the purposes of harassment. *United States v. Chamero*, 687 F.2d 1 (1st Cir.) *cert. denied*, 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 613 (1982). Accordingly, defendant's motion to suppress is denied. His Fourth Amendment rights were not violated.

**B.** *Motions to Dismiss.*

(1) *Motions to dismiss Count I.*

■■■ Count I alleges conspiracy to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1). The indictment also sets forth a description of the conspiracy and includes 15 overt acts in furtherance of the alleged scheme. Certain defendants argue the overt acts do not sufficiently describe them as part of the conspiracy. However, an "indictment under section 846 need not allege overt acts and is basically sufficient if set out substantially in the words of the statute." *United States v. Smith*, 692 F.2d 693, 696 (10th Cir.1982). Where overt acts are included in the indictment, they may be treated as surplusage. *See United States v. Swingler*, 758 F.2d 477, 492 (10th Cir.1985).

■■■ Count I contains the requisite statutory elements, adequately informs defendants of the charge against which they are required to defend, and enables them to plead former jeopardy should future proceedings be brought for a similar offense. Thus, the requisites of Rule 7(c)(1), Fed.R. Crim.Proc., are satisfied. *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983).

■■■ The gravamen of the offense is the agreement to violate the narcotics laws; hence, the government "need only prove an agreement and need not allege or prove an overt act." *United States v. Mayo*, 721 F.2d 1084, 1089 (7th Cir.1983); *Timberlake v. United States*, 767 F.2d 1479, 1481–82 (10th Cir.1985). Further, the statute's proscriptions against conspiracies to violate the narcotics laws have been upheld as constitutional and not violative of either the First or Fifth Amendments. *United States v. Cooper*, 606 F.2d 96, 98 (5th Cir. 1979) *cert. denied*, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980).

Finally, Count I of the indictment is valid on its face and not subject to challenge on the basis that the grand jury considered inadequate or incompetent evidence. *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974).

Accordingly, all motions to dismiss based on alleged improprieties or deficiencies with Count I are denied.

(2) *Motion to dismiss Count I, V, XV (Anna Maria Martinez).*

There is a presumption of regularity which attaches to ... [grand jury] proceedings and the defendants have a difficult burden to prove any irregularity. [citations omitted]

*United States v. Battista*, 646 F.2d 237 (6th Cir.1981).

The validity of an indictment is not affected by the type of evidence which is considered by a grand jury even though inadequate or incompetent.

*United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). *See also Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed.2d 397 (1956); *United States v. Radetsky*, 535 F.2d 556 (10th Cir.1976).

Anna Maria Martinez' motion as to Counts I, V, and XV is unconvincing. The grand jury's finding of probable cause relating to the counts should not be second guessed, especially in view of the caselaw cited above. Defendant's motions to dismiss Counts I, V, and XV are denied.

(3) *Motion to dismiss Count V (Anna Maria Martinez).*

In the case of Count V, almost seven transcript pages of Steve Torrey's grand jury testimony detail the alleged transactions involving Martinez. Under the caselaw cited immediately above, I deny Martinez' motion to dismiss Count V.

**(4)** *Motion to dismiss Count XII (Christine Benavidez).*

Here again I will follow the United States Supreme Court's view in *Calandra, supra,* and its progeny and choose not to delve blindly into the ambiguities surrounding the grand jury's decision to charge this defendant in Count XII.

None of the cases cited in this defendant's December 15, 1986 motion applies Tenth Circuit law. Further, *U.S. v. Radetsky, supra,* holds contra. Defendant Benavidez' motion to dismiss Count XII is denied, as is her motion to dismiss Count I.

**(5)** *Motion to dismiss on the grounds of pre-indictment delay (Richard Nunez).*

Defendant Nunez asserts that because no citizen of the United States should be required to answer in a criminal courtroom to charges that are as "stale" as the charges in this case (according to defendant, the indictment was filed on May 23, 1986 for crimes allegedly occurring in May and June of 1985) and particularly since the conspiracy is as broad in scope as has been charged here. He claims that to compel such a trial is a denial of his constitutional rights. Further, he asserts he is prejudiced by the delay and is unable to prepare this case properly for trial by reason of such delay.

▇▇▇▇ The government contends the July 23, 1986 superseding indictment charges defendant for his participation in a heroin trafficking conspiracy from June 1984, until June 11, 1986 (Count I), and with possession of heroin with the intent to distribute on June 17, 1985 (Count IV). Further, in determining whether preindictment delay has violated a defendant's due process rights, the court must determine whether the defendant has shown that: (1) there was actual prejudice resulting from the delay; and, (2) the delay was purposefully designed to gain tactical advantage or to harass the defendant. *United States v. Pino,* 708 F.2d 523, 527 (10th Cir.1983); *United States v. Jenkins,* 701 F.2d 850, 854 (10th Cir.1983); *United States v. Barker,* 623 F.Supp. 823, 838 (D.Colo.1985).

Defendant has failed to show prejudice or that any delay was purposeful. Moreover, he has failed to show any delay in bringing the indictment which alleges that the conspiracy continued until June 11, 1986. Accordingly, defendants' motions to dismiss are denied.

**(6)** *Motion to dismiss Count IV–Multiplicity (Richard Nunez).*

Defendant is charged in Count I with conspiracy and in Count IV with possession of heroin with the intent to distribute. He states the two counts are essentially the same as applied to him because in both counts the only description of illegal activity against him is with respect to a June 17, 1985 meeting with Antonio Nunez, Charles Nunez and Anthony Garcia. He concludes he is being charged with the same crime in two separate counts and thus Count IV must be dropped.

▇▇▇▇ The government responds, firstly, that if there is duplicity, then the government, not the defendant, is required only to elect between counts before trial. *United States v. Franks,* 723 F.2d 1482, 1486 (10th Cir.1983). Secondly, and what is applicable to the disposition of this motion, is that the superseding indictment is not multiplicitous where there are two separate offenses charged. The offenses are (1) conspiracy and (2) possession. These two offenses have long been held to be *separate and distinct offenses* justifying consecutive punishments. *United States v. Jackson,* 482 F.2d 1167, 1176–77 (10th Cir.1973) *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974). Accordingly, the motion to dismiss is denied.

**(7)** *Motion to dismiss indictments (Ellen Nunez).*

Defendant has set forth a number of unrelated reasons why the indictment against her should be dismissed. Her contentions, however, are without merit. For the following reasons, the motion is denied.

▇▇▇▇ The indictment and superseding indictment have already been determined to be valid and returned by a legally constitut-

ed grand jury. They are not subject to an attack on the basis that the grand jury acted on incompetent evidence. *United States v. Calandra, supra.*

■ Although Ellen Nunez was granted immunity under 18 U.S.C. § 6001, *et seq.*, she was never called to testify before the grand jury and therefore no testimony was ever compelled on the basis of the immunity order. The statutory immunity granted is not the equivalent of amnesty and is no broader than her Fifth Amendment privilege. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

Counts I and IV are valid and sufficient for the reasons set forth above. Accordingly, the motion is denied.

## C. *Motions In Limine.*[4]

### (1) *Tape recordings and transcripts.*

#### a. *Tape summaries.*

Federal Rule of Evidence 1006 states:

The contents of ... recordings which cannot be conveniently examined in court may be presented in the form of a ... summary ....

■ Since evidence in this case includes approximately 112 tape recordings, I will allow composite tapes to be presented at trial provided they are representative and in proper context.

#### b. *Identity of speakers in taped conversations.*

The general provision of Federal Rule of Evidence 901(a) states:

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Illustrations outlined specifically in Federal Rule of Evidence 901(b) include the following as conforming with the requirements of this rule:

**4.** Any motions in limine concerning *"James* hearings" are deemed to be included in the discussion in Part II.A.(2)b.(ii), *supra.* Accord-

### (5) *Voice identification*

Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

### (6) *Telephone conversations*

Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called ....

■ The Tenth Circuit has held that a threshold showing of the identity of parties to a telephone conversation can be shown by circumstantial evidence, such as name references and pen register records. *See United States v. Cook,* 794 F.2d 561, 567 (10th Cir.1986); *United States v. Cox,* 449 F.2d 679, 689 (10th Cir.1971). Once this threshold showing of speaker identity is made, it is for the jury to determine if the voice is actually that of the defendant. *United States v. Cook, supra. See also United States v. Watson,* 594 F.2d 1330, 1334 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979).

■ Further, "it is uncontested that the trial court may, in some circumstances, employ supplemental transcripts to assist the jury in following a recorded conversation." *United States v. Lambinus,* 747 F.2d 592, 597 (10th Cir.1984), *citing United States v. Lucero,* 601 F.2d 1147, 1149 (10th Cir.1979). I see no reason to deny the use of such transcripts in this case. Under *Lucero, supra* at 1149 note 2, however, the defense may offer its own version of a transcript with which it disagrees.

The government agrees to delete the voice identification "voice-over" from the six composite tapes. Regarding the ultimate identification of speakers, the government will first be required to introduce

ingly, the motions in limine requesting a *James* hearing are hereby summarily denied.

evidence and establish a basis as to each speaker's identity. Once adequate foundation is laid, it is likely I will allow identities to be inserted into transcripts for the jury's clarification and organizational purposes.

(2) *Hearing on admissibility of wiretap conversations.*

Defendants' request for an in limine hearing to determine the admissibility of the evidence derived from wiretap conversations is denied. This court is not required to determine the admissibility of evidence until it is offered. *United States v. Monaco,* 700 F.2d 577, 581 (10th Cir. 1983).

(3) *"Drug lingo" interpretation.*

██ Pursuant to Federal Rule of Evidence 702, the specialized knowledge of a qualified witness is admissible to "assist the trier of fact to understand the evidence or determine a fact in issue." *See* Federal Rule of Evidence 702. An experienced narcotics agent may explain the meaning of drug trafficking jargon. *United States v. Dawson,* 556 F.Supp. 418, 423. I will allow duly qualified witnesses to express opinions as to the meaning of "drug lingo", where such opinions otherwise comport with the Federal Rules of Evidence.

(4) *Safe deposit box X13643.*

This motion is moot. The government filed an August 22, 1986 motion agreeing not to introduce the contents of this box into evidence.

(5) *Calls numbered 249, 281, 290, and 316.*

Defendants contend the admission into evidence of these phone calls would be more prejudicial than probative under Federal Rule of Evidence 403. I disagree. The government seeks to prove conspiracy charges and these above-numbered phone conversations are potentially quite probative in this regard. Any probative effect is certainly not "substantially outweighed" by possible prejudicial effect. *See United States v. Cook,* 794 F.2d 561, 568 (10th Cir.1986).

(6) *Alleged acts of violence by Antonio Nunez, other criminal cases in which Mr. Nunez was involved, and privileged matters.*

The heroin related death of Frank Lucero is more probative than prejudicial under the circumstances of this case. I will admit this evidence where it otherwise comports with the Federal Rules.

The government agrees not to introduce evidence concerning: (a) Antonio Nunez' arrest in Adams County, (b) the petition for writ of habeas corpus, (c) attorney papers concerning Antonio Nunez, or (d) seizure of cocaine from Antonio Nunez' home on June 17, 1985.

I shall not rule on the relevance of other evidence mentioned by defendants until trial.

(7) *Christine Benavidez' motion in limine filed July 21, 1986.*

Ms. Benavidez seeks to prohibit introduction into evidence of call number 1108 (5/29/85), call number 1126 (5/29/85), and call number 3363 (6/15/85). These calls, however, were made within the time period encompassed by the superseding indictment, and are admissible to prove this defendant's alleged involvement in the charged conspiracy. See *United States v. Andrews,* 585 F.2d 961, 964 (10th Cir.1978). Defendant's motion is denied.

(8) *Christine Benavidez' motion to strike the nickname "Kiki" from the indictment.*

██ This motion is granted insofar as the government may not refer to this defendant as "Kiki" during trial. An exception to this ruling is that the government may demonstrate to the jury that any recorded conversations, transcripts, or documents which use the nickname "Kiki" actually refer to this Christine Benavidez.

D. *Motions for Severance.*

Under Federal Rules of Criminal Procedure 8(a) and 8(b) and relevant caselaw,

joinder of all counts and defendants is proper in this action.

■ The Tenth Circuit has held joinder of offenses is proper if they are of the same character and grow out of a common scheme or plan. *United States v. Walten,* 552 F.2d 1354, 1362 (10th Cir.1977). The government has made it clear it seeks to prove each of the defendants was a spoke in a single wheel conspiracy under the reasoning of *Blumenthal v. United States,* 332 U.S. 539, 558, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947) and *Kotteakos v. United States,* 328 U.S. 750, 755, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946). The various severance motions made by defendants fail to attenuate convincingly their alleged conspiracy involvement for purposes of severance. Additionally, defendants cite almost no relevant statutes or caselaw in support of their propositions.

Lastly, considerations of economy and expedition in judicial administration strongly warrant denial of all defendants' severance motions. *See United States v. Barker,* 623 F.Supp. 823, 834 (D.Colo.1985). All defendants' motions for severance of counts and defendants are therefore denied.

IT IS THEREFORE ORDERED THAT:

1. All pending motions to dismiss, to suppress, and to sever are denied.

2. All pending motions in limine are either denied or rendered moot by government acquiescence.[5]

3. Any pending motions which have not been addressed in this opinion are moot.

---

5. EXCEPTION: As mentioned in section C.(8) above, Christine Benavidez' motion to strike the nickname "Kiki" from the indictment is granted (subject to the exception that the government may demonstrate to the jury that the nickname, as used in telephone conversations, refers to Ms. Benavidez).