2 F.3d 1161
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David ELLZEY, Defendant-Appellant.
 No. 92-2127.
 United States Court of Appeals, Tenth Circuit.
 Aug. 10, 1993.
 
 Before LOGAN, TACHA and KELLY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 Defendant David Ellzey appeals his conviction for extorting the United Bank of New Mexico in Moriarty, New Mexico, in violation of 18 U.S.C. Secs. 2 and 1951. On appeal, he argues that the district court should have dismissed the indictment against him because of prosecutorial misconduct in obtaining testimony against him and in seeking dismissal of a prior indictment. Alternatively, defendant alleges that reversal is required because the prosecutor made improper comments during his closing arguments and that the district court violated his right to confront the witnesses against him by limiting his cross-examination of a government witness.
 
 
 3
 In 1989, defendant's son Brian Ellzey was convicted of extorting the same bank, and sentenced to forty-one months imprisonment. The government then sought to prosecute defendant for the same extortion scheme. In 1990, the government issued a subpoena to compel Brian Ellzey to testify before a grand jury, under a grant of immunity, regarding his father's role in the crime. Brian refused to testify and was held in contempt. Then, in 1991, the government learned from an inmate informant that Brian was interested in cooperating with the investigation of his father. An FBI agent spoke to Brian in prison in Arizona, but Brian indicated that he wanted to deal directly with the Assistant United States Attorney assigned to the case, Robert Gorence. Accordingly, Gorence and the FBI agent returned to Arizona a few weeks later and took Brian's statement, which he later reviewed and signed. Brian's attorney was never informed of these meetings.
 
 
 4
 The next month, a federal grand jury returned an indictment against defendant accusing him of extorting the bank. Defendant moved to have the indictment dismissed based on prosecutorial misconduct in obtaining his son's testimony, and on the government's alleged failure to present exculpatory evidence to the grand jury. After District Judge Parker orally granted defendant's motion on the latter of these grounds the government returned immediately to the grand jury to obtain a second indictment, this time presenting the allegedly exculpatory evidence. The second indictment, identical to the first, was assigned to District Judge Conway. Then Judge Parker rescinded his oral ruling and denied defendant's motion to dismiss. With two identical indictments pending against defendant, the government moved to have the first indictment dismissed. Judge Parker granted this motion, and Judge Conway denied defendant's motion to dismiss the indictment pending in his court. Thus, the case proceeded before Judge Conway.
 
 
 5
 * Defendant maintains that the government's conduct, both in obtaining his son's testimony against him and in seeking dismissal of the first indictment before Judge Parker once the second indictment before Judge Conway was returned, entitles him to dismissal of the indictment against him. We review a trial court's order granting or denying a motion to dismiss an indictment for abuse of discretion. United States v. Strayer, 846 F.2d 1262, 1265 (10th Cir.1988).
 
 
 6
 Defendant contends that government agents threatened Brian with another subpoena and additional prison time for contempt if he did not testify against defendant, that government agents pursued Brian without notice to his attorney, and that this amounted to conduct so outrageous that it violated defendant's right to fundamental fairness under the Due Process Clause. See United States v. Russell, 411 U.S. 423, 431-32 (1973) ("we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction").
 
 
 7
 Although this court has frequently acknowledged that such an instance of outrageousness might one day arise, see United States v. Lambinus, 747 F.2d 592, 595 (10th Cir.1984), cert. denied, 471 U.S. 1067 (1985); United States v. Salazar, 720 F.2d 1482, 1488 (10th Cir.1983), cert. denied, 469 U.S. 1110 (1985); United States v. Monaco, 700 F.2d 577, 580 (10th Cir.1983), we have also observed that the defense of outrageous government conduct "is almost never successful." United States v. Gamble, 737 F.2d 853, 857 (10th Cir.1984). "A defendant seeking dismissal of an indictment on this basis must establish that the police conduct is shocking to the universal sense of justice." United States v. Fadel, 844 F.2d 1425, 1429 n. 3 (10th Cir.1988) (quotation omitted).
 
 
 8
 Even if we assume that the government agents knowingly flouted the rules of professional conduct regarding contact with parties represented by counsel, their conduct was not egregious enough to require the extraordinary remedy of dismissal of the indictment. See, e.g., United States v. Pino, 708 F.2d 523, 529-31 (10th Cir.1983) (declining to dismiss indictment when non-English speaking juvenile brother of defendant was cross examined before grand jury on statement that was suppressed at earlier proceeding as not being voluntarily and intelligently made). Nor do we invoke our supervisory powers when the government's conduct does not pose a threat to the integrity of the court. See United States v. Payner, 447 U.S. 727, 736 n. 8 (1980) (deciding analogous issue that supervisory powers do not authorize courts to suppress otherwise admissible evidence on ground that it was seized unlawfully from third party).
 
 
 9
 We are also unpersuaded by defendant's assertion that the government engaged in "forum shopping" when it sought to have the first indictment dismissed and to proceed before Judge Conway. Rule 48(a) of the Federal Rules of Criminal Procedure provides, in pertinent part, that "the United States attorney may by leave of court file a dismissal of an indictment ... and the prosecution shall thereupon terminate." Requiring leave of the court to dismiss an indictment prevents the prosecutor from harassing a criminal defendant by repeatedly filing and dismissing charges, and allows the court "to consider public interest, fair administration of criminal justice and preservation of judicial integrity when evaluating motions to dismiss." Strayer, 846 F.2d at 1265.
 
 
 10
 Here we see no evidence of harassment. If anything, the government appears to have been particularly conscientious in obtaining a second indictment immediately upon learning that the first indictment was dismissed, thereby avoiding any uncertainty as to defendant's status. Further, we can find no indications that public interest, fairness, or judicial integrity were in any way jeopardized by the government's seeking the dismissal, or that the prosecutor acted in bad faith. See United States v. Salinas, 693 F.2d 348, 352 (5th Cir.1982) ("the burden is not on the prosecutor to prove that dismissal is in the public interest"). The district court did not abuse its discretion in declining to dismiss the indictment.
 
 II
 
 11
 Defendant also alleges that the prosecutor's comments during his closing argument amount to misconduct requiring reversal. We review such claims using a two-step process. First, we examine whether the conduct was in fact improper. If so, we determine whether it requires reversal or was harmless error. United States v. Lonedog, 929 F.2d 568, 572 (10th Cir.), cert. denied, 112 S.Ct. 164 (1991). "It is only when such conduct can present a question whether there is reason to believe that it influenced the jury's verdict that the failure to take appropriate steps to remove it will warrant a reversal." United States v. Martinez-Nava, 838 F.2d 411, 416 (10th Cir.1988) (quotation omitted).
 
 
 12
 Defendant points to three separate remarks the prosecutor made during closing arguments that he contends affected the outcome of his trial. We agree with the district court's assessment that these were in response to arguments defendant's attorney made during his summation. It was his own attorney who suggested that defendant could not possibly have been involved in a previous unsolved bank extortion because that incident involved a phone call to the bank by the extortionist, and defendant's voice is so distinctive. In that context, the prosecutor's speculation that defendant's other son participated in the unsolved extortion was not improper. Similarly, the prosecutor's summary of Leslie Bicknell's testimony was in response to defendant's attorney's attempt to impeach that testimony. The prosecutor explained that there was no discrepancy between Ms. Bicknell's grand jury testimony and her trial testimony. Insofar as he implied that Ms. Bicknell told the grand jury how defendant and his son split the proceeds of the extortion, we do not believe this was significant or influential. Nor do we believe the jury's verdict was compromised by the prosecutor's explanation that Kelly Bicknell was not asked to testify because he was drunk at the time Brian admitted his involvement. Because the prosecutor's rebuttal did not cause the jury to render a verdict beyond the admissible evidence, defendant is not entitled to a new trial.
 
 III
 
 13
 Finally, defendant argues that the district court improperly limited his cross-examination of a government witness, thereby violating his right to confront the witnesses against him. We review Confrontation Clause claims de novo. United States v. Ellzey, 936 F.2d 492, 495 (10th Cir.), cert. denied, 112 S.Ct. 400 (1991).
 
 
 14
 At trial, defendant sought to cross examine FBI Agent Craig, who had testified before the grand jury that two key witnesses against defendant had passed lie detector tests administered by the FBI. Apparently both of these witnesses had shown "deceptive" responses to several questions, although neither of them indicated deception in responding that they were not involved in the extortion. The district court ruled that in light of the fact that both witnesses "passed" the polygraph, introducing this cross-examination would only confuse the jury.
 
 
 15
 Defendant maintains that agent Craig's failure to disclose to the grand jury that the polygraphs showed some deceptive responses reflects on his credibility, and that defendant should be able to cross-examine this key government witness on this point. We disagree. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross examination." Id. at 680.
 
 
 16
 Here the district court determined, under Rule 403 of the Federal Rules of Evidence, that the probative value of defendant's cross-examination of Craig was outweighed by the danger that it would confuse the jury. We agree with the district court that there is nothing relating to Craig's reliability that would have been revealed by cross-examination on this point. Rather, such cross-examination likely would have resulted in a mini-trial on the proper method for interpreting polygraph results. The district court was within the "wide latitude" accorded to it under Van Arsdall when it excluded this cross-examination testimony.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrine of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3